### A97A2026. BROWN v. THE STATE.
(495 SE2d 858)

BEASLEY, Judge.

Jeffrey Brown appeals from a conviction of theft by receiving stolen property involving a 1984 Nissan 300ZX. OCGA § 16-8-7. He was sentenced to ten years confinement. In the same trial, Brown was acquitted of the same offense involving a 1995 Ford Explorer and of possession of that vehicle without the manufacturer's serial number. OCGA § 40-4-22. Brown's sole enumeration of error is that the court erred by failing to separate the trial of the Nissan charge from the Ford charges.

Prior to trial, Brown moved to sever from each other groups of offenses related to three separate incidents. Thereafter he pleaded guilty to shoplifting charges arising in one of the incidents. As to the other two, he argued that "[t]here is no evidence that the instances stemming from the receipt of the stolen Nissan [and] the stolen Ford Explorer . . . show any common pattern, motive, plan, scheme, or bent of mind so as to justify joinder of these charges for the purposes of trial." The trial court denied the motion and denied Brown's renewed motion before trial. After presentation of the State's case, Brown moved for mistrial based on the court's failure to sever. That motion, and a motion for new trial made after judgment, were also denied.

1. Where two offenses have been joined "solely on the ground that they are of the same or similar character," the defendant has a right to sever the offenses for trial.[1] But, as argued by the State, where two offenses have been joined on the ground that they are based "(1) 'on the same conduct' or (2) 'on a series of acts connected together' or (3) on a series of acts 'constituting parts of a single

---

[1] *Dingler v. State,* 233 Ga. 462, 464 (211 SE2d 752) (1975). *Dingler* involved three counts of theft by receiving stolen property, and "[a]ll three of the offenses occurred at different times and involved different property stolen from different persons." *Dingler v. State,* 134 Ga. App. 223 (214 SE2d 6) (1975).

scheme or plan,' " the trial judge has discretion to grant severance if necessary " 'to achieve a fair determination of the defendant's guilt or innocence of each offense.' "[2] For these purposes, "the same conduct" means "the same transaction."[3]

The record and transcript are ambiguous as to the basis of the court's denial of Brown's motion to sever. The discussion immediately prior to trial appears to indicate that the court denied the motion to sever on the sole ground that the two transactions were similar. If so, the court erred. After trial the State admitted that "the evidence is . . . not totally conclusive on the proposition that these incidents were part of a common scheme or plan." The State argues that it is a reasonable inference that the two incidents "were part of a common scheme or plan to dispose of stolen vehicles" despite the lapse of eleven months between them. The facts must be examined.

With regard to the Nissan, the evidence presented at trial showed that on March 1, 1995, Jeffrey Brown and Joseph Bing went to Nick's Auto Sales in Columbia, South Carolina, in a black BMW. While Joseph Bing stayed in or near the BMW, Brown test drove a 1984 Nissan 300ZX with a salesman. On the drive, Brown pulled over and told the salesman that he believed there was a flat tire. Both men got out of the car, but Brown jumped back in and drove away, leaving the salesman standing on the interstate. Police were called to Nick's Auto, and Bing and the BMW were still there when they arrived. The BMW contained a Georgia Power bill with a due date of March 10, 1995, in the name of Jeffrey Brown with an address in Augusta.

Richmond County, Georgia police were informed of the incident on March 3, 1995, and asked to investigate Brown at the address shown on the bill. The investigator went to the apartment complex at the address given, where Brown lived, and told the apartment manager and maintenance person to watch for the Nissan and Brown. Later that day, the manager called back and reported she had seen Brown and another man exit a Nissan. The maintenance worker also saw Brown in the Nissan at about the same time. After the officer found Brown hiding at the apartment complex, a fight occurred and Brown escaped. He was not arrested until February 16, 1996. The stolen Nissan was recovered on March 3. Its vehicle identification number plate had been removed from the inside dash.

As for the green 1995 Ford Explorer, it was stolen from Bourne Toyota in Columbia County, Georgia, after the close of business on November 10, 1995. The following January, Richmond County inves-

---

[2] (Citations omitted.) *Haisman v. State,* 242 Ga. 896, 900 (252 SE2d 397) (1979). See also OCGA § 16-1-7.

[3] *Davis v. State,* 159 Ga. App. 356 (283 SE2d 286) (1981).

tigators were investigating a possible auto theft ring that involved stealing cars such as Mercedes, BMW, and Lexus from out of town and bringing them into Augusta. Two suspects gave information to an investigator that a 1995 Ford Explorer which had been stolen from Columbia County was located in Richmond County, and that Brown had been driving it. On February 8, a Richmond County investigator went to the address given by the suspects and found a blue 1995 Ford Explorer from which the vehicle identification plate had been removed. He confirmed that it was the stolen car and had been repainted.

The address was for an apartment occupied by Tammy Taylor, who drove up while the officer was present. The officer never saw Brown at Taylor's apartment, but he had information that Brown lived with her and he told Taylor to tell Brown to call him. The officer testified that someone later called about the Ford Explorer, identified himself as Jeffrey Brown, and admitted he knew about the Explorer. The Explorer was inventoried, and a document with Brown's name and signature were found together with life insurance papers bearing Tammy Taylor's name. There was no evidence that Brown lived with Taylor or that the Nissan was connected with the auto theft ring. Nor was Brown directly implicated in the auto theft ring.

In *Booker v. State*, 231 Ga. 598 (203 SE2d 194) (1974), the Supreme Court held that two separate charges of armed robbery arising out of incidents that occurred one week apart should have been severed. The "separate crimes did not arise out of the same conduct, did not involve the same victims or witnesses and the evidence of one would not be admissible on the trial of the other." Id. at 599 (1). See also *Haisman v. State*, supra. Here, there is no evidence showing the two incidents were part of a scheme or plan. The only similarities remotely suggesting a common scheme or plan are the fact that the VIN plate on both cars was removed, and both cars were stolen from dealerships. The similarities are commonplace in auto theft, but the differences are significant. The offenses occurred 11 months apart in different locations, at different times of the day, by different methods of larceny, and involved different victims and different schemes. There are no common witnesses. One car was repainted; the other was not.

The similarities do not reveal a scheme or a common modus operandi and are an insufficient basis to deprive a defendant of his right to sever as found in *Dingler*.[4]

---

[4] See also *Davis v. State,* supra (counts of robbery should have been severed where they did not arise from the same transaction and where they were joined solely on the ground they were of the same or similar character); *Wigley v. State*, 140 Ga. App. 145 (230 SE2d

*Bailey v. State*,[5] relied on by the State, is distinguishable. The two burglaries could be tried together because they were similar in many ways, were separated by only a few days in time, occurred within one-fourth of a mile of each other, and the defendants stated "they were involved in a continuing burglary scheme." Id. at 223 (3). Nor was severance necessary in *Cooper v. State*, 253 Ga. 736 (325 SE2d 137) (1985), because the three incidents bore similar characteristics and were so related in time that "the similarity reaches the level of a pattern."[6] They occurred over a 15-day span in the same vicinity, all against women, and each involving physical violence. Thus, in *Bailey* and *Cooper* the trial court had discretion to refuse to sever.[7]

Although separate crimes that are "somewhat removed from one another in terms of time and place" may constitute parts of a single scheme or plan,[8] the 11-month separation and the lack of other factors showing a common scheme or plan compel the conclusion that the counts should have been severed.

2. In addition to error, the appellant must establish prejudice or harm to obtain reversal.[9] Severance is designed to protect a defendant from, among other things, " 'the great risk of prejudice from a joint disposition of unrelated charges,' " and " 'confusion of law and evidence by the trier of the fact and the "smear" effect such confusion can produce.' "[10] Brown argues that joinder caused "a smear effect" that created "an unfair disadvantage" for him at trial.

Even though Brown was acquitted of the charges involving the Ford Explorer, the court must analyze whether the defendant was harmed by the joint trial. In *Carter v. State*, 261 Ga. 344, 345 (1) (404 SE2d 432) (1991), the Supreme Court noted that the "posture of the defense would have been dramatically different had the severance motion been granted." It reversed the conviction even though Carter had been acquitted of the second murder charge.[11]

---

108) (1976) (three counts of drunk driving which occurred in a five-month period should have been severed).

[5] 157 Ga. App. 222 (276 SE2d 843) (1981).

[6] Id. at 737 (3).

[7] See also *Davis v. State*, 223 Ga. App. 346 (477 SE2d 639) (1996) (not error to refuse to sever incidents of theft by taking and robbery committed a month apart, in the victims' homes, from the victims' purses, and where the victims were known to the defendant, because they constituted parts of a single scheme or plan and shared a single criminal purpose); *Mack v. State*, 163 Ga. App. 778, 779 (1) (296 SE2d 115) (1982) (two incidents were so similar "as to evidence a common plan or scheme and revealed an identical modus operandi").

[8] *Clemson v. State*, 239 Ga. 357, 359 (236 SE2d 663) (1977).

[9] *Brown v. State*, 173 Ga. App. 640 (327 SE2d 515) (1985).

[10] (Citations omitted.) *Dingler v. State*, 233 Ga. at 463.

[11] But see *Gober v. State*, 247 Ga. 652 (278 SE2d 386) (1981); *Williams v. State*, 186 Ga. App. 266 (367 SE2d 92) (1988) (question moot where defendant acquitted of the charges

Brown testified at trial, but his attorney questioned him only about the allegations regarding the Ford Explorer, which he strongly denied. He never denied involvement with the Nissan. The cross-examination was limited to the same topic. The contrast of Brown's denial of involvement with the Ford Explorer together with his silence regarding the Nissan could have created the direct implication that Brown was guilty of the Nissan incident. A separate trial would obviate this comparison.

The argument that the Ford episode could have been admitted as evidence of a similar transaction is not supported by the facts. But first of all the two standards are different. "[T]he criteria for the introduction of similar transactions under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), are considerably more rigorous than the evidentiary standard for determining 'similarity of conduct' for purposes of joinder. Under the analysis of *Williams*, supra, the state must show not only significant similar conduct, but similarity to the extent that proof of one offense tends to prove the other. *Williams*, [261 Ga.] at 642. Under the evidentiary standard for joinder, the state must show similarity of conduct only to the extent that the sole purpose of joinder is not because the offenses are of a like 'character.' *Swinney* [*v. State*, 217 Ga. App. 657, 659 (458 SE2d 686) (1995)]."[12]

Under the similar transaction analysis, there is very little evidence that Brown was a knowing participant in the Explorer incident and no one testified to seeing Brown in the car or in possession of it. One part of the test for admitting evidence of similar transactions is that the State must make an affirmative showing that the accused committed the independent offense or act.[13] Here, that is highly questionable.

As in *Carter*, the posture of Brown's defense likely could well have been different had the severance motion been granted.

*Judgment reversed. McMurray, P. J., and Senior Appellate Judge Harold R. Banke concur.*

---

defendant wanted severed and where he has shown no harm or prejudice from the joint trial); *Franklin v. State*, 185 Ga. App. 502 (364 SE2d 632) (1988). *Gober, Williams,* and *Franklin,* all reverse after finding the trial court should have granted the motion to sever, without considering whether the error was harmful. Another line of cases find no harm where the defendant was acquitted of the charges he wished severed. See *Watkins v. State*, 187 Ga. App. 108 (1) (369 SE2d 356) (1988) ("[an]y error resulting from the failure to sever those charges of which the appellant was acquitted was, of course, harmless."); *Hayes v. State*, 182 Ga. App. 26, 27 (354 SE2d 655) (1987) (any error for failure to sever a count for which defendant was acquitted was harmless). These cases pre-date *Carter*.

[12] *Smith v. State*, 225 Ga. App. 553, 556 (484 SE2d 515) (1997).

[13] *Williams v. State*, 261 Ga. at 642.

DECIDED JANUARY 15, 1998.

*Garrett & Gilliard, Michael C. Garrett, Kirk E. Gilliard*, for appellant.

*Daniel J. Craig, District Attorney*, for appellee.