S02A1323. MORGAN v. THE STATE.
(575 SE2d 468)

BENHAM, Justice.

Appellant Jamie Ray Morgan was convicted of malice murder in the April 18, 2000, shooting death of Jeremiah Anderson in a Gilmer County fast-food restaurant. He was also found guilty of possession of a firearm during the commission of a crime, possession of marijuana with intent to distribute, and two counts of witness intimidation.[1] He appeals the judgment of conviction, contending that a number of legal errors were committed by the trial court and that he was denied effective assistance of counsel. We disagree and affirm.

1. Eyewitnesses saw appellant shoot the victim in the head, then stand over the fallen victim and shoot him in the head again. Stippling surrounding the entrance wounds established that both shots were fired from a distance of less than one foot. Appellant claimed he shot the victim because he had been told the victim had threatened to kill appellant and appellant believed the victim was carrying a weapon under his rolled-up jacket. No weapon was found, witnesses

---

[1] The homicide occurred on April 18, 2000, the marijuana possession on March 29, 2000, and the witness intimidation between those two dates. The Gilmer County grand jury returned a true bill of indictment against appellant on October 12, 2000, and appellant stood trial October 15-18, 2001. The jury returned its guilty verdicts on October 18 and, on October 25, the trial court sentenced appellant to life imprisonment for malice murder and to consecutive sentences of ten years' imprisonment for the marijuana possession; five years for the possession of the firearm during the commission of a crime; five years for threatening the witness/victim, and ten years for using physical injury against the witness/victim to prevent his testimony. Appellant's motion for new trial, filed November 21, 2001, was denied February 12, 2002. His notice of appeal was filed on March 11, 2002, and amended on May 2. The appeal was docketed in this Court on May 14 and oral argument was heard on September 10, 2002.

saw no weapon in the victim's hands, and witnesses testified the victim carried the rolled-up jacket under his arm like a football, and not draped over his hand as appellant asserted. In a post-arrest statement to a GBI agent, appellant admitted having shot the victim and having tossed the weapon out the car window. With appellant's help, the agent found the weapon and a firearms expert testified the gun recovered was the weapon that had fired the bullets removed from the victim's head.

The State presented evidence that appellant shot the victim because the victim had provided information to law enforcement authorities about appellant and illegal drug activity after the two had been stopped in appellant's car and marijuana and methamphetamine were discovered. Based on the victim's information following that stop, a search warrant had been executed on March 29, 2000, at the Gilmer County apartment of appellant and his girlfriend, and the search resulted in the seizure of six bags of marijuana. Two deputy sheriffs testified that, in separate statements, appellant told them the marijuana found in the apartment belonged to him, not his girlfriend. Appellant was indicted for possession of marijuana with intent to distribute and possession of more than one ounce of marijuana. The victim's identity as informant was disclosed in the search warrant application which was attached to the copy of the search warrant left at the apartment. Several witnesses testified appellant had threatened the victim with physical injury for "ratting" on him.

The evidence was sufficient to authorize a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt of malice murder, possession of marijuana with intent to distribute, possession of a firearm during the commission of a crime, influencing a witness by communicating a threat of injury, and influencing a witness by using physical force to prevent the witness from testifying. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The "sufficiency of the evidence" test enunciated in *Jackson v. Virginia*, supra, is also used when an appellate court reviews the trial court's denial of a defendant's motion for directed verdict of acquittal. *McClellan v. State*, 274 Ga. 819 (1) (561 SE2d 82) (2001). Appellant contends he was entitled to directed verdicts because the State did not establish the marijuana found in his apartment belonged to him and because the State did not disprove beyond a reasonable doubt his justification defense. After reviewing the evidence, we conclude the State met its burden of proof and the trial court did not err in denying the motion. Id.

2. Appellant contends his right to a fair and impartial jury, guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section I, Par. XI of the Georgia Constitution, was compromised by the giving of a Christian invocation by a minister before

the jury-selection process. Appellant asserts that the delivery of a prayer before prospective jurors results in a verdict reached by reliance on something other than the evidence presented to the jury and is "tainted by the passions inflamed by religion." The record in the case at bar does not disclose the contents of the prayers or identify the person delivering it.[2]

In a case involving a similar factual setting, this Court determined that "[a]n invocation is not prejudicial *per se*, and the defendant has not shown that this particular invocation was prejudicial." *Isaacs v. State*, 259 Ga. 717, 729 (18) (386 SE2d 316) (1989). In reviewing the denial of Isaacs's petition for writ of habeas corpus filed in federal court, the U. S. Court of Appeals for the Eleventh Circuit recently noted it was unaware of any precedent from the United States Supreme Court which held that the giving of a prayer at trial is a per se violation of the U. S. Constitution. *Isaacs v. Head*, 300 F3d 1232, 1252 (11th Cir. 2002). References to religion that invite jurors to base their verdict on matters not in evidence should be avoided in prosecutorial argument (*Carr v. State*, 267 Ga. 547, 556 (7) (c) (480 SE2d 583) (1997)) and in the trial court's remarks to the jury. *Jones v. State*, 270 Ga. 25, 29 (9) (505 SE2d 749) (1998). Without the contents of the prayer, however, we are unable to say that such a transgression occurred in the case at bar. See *Isaacs v. State*, supra, 259 Ga. at 729. Accordingly, we conclude that appellant's assertion of error is without merit.

3. Appellant maintains the trial court erred when it declined to sever the two counts of the indictment charging him with possession of marijuana from the murder and witness-influencing charges. The marijuana charges stem from the search of appellant's apartment pursuant to information provided by the victim, and the prosecution of those charges was the official proceeding involved in the witness-influencing charges. "Where, as here, two or more charges are joined because they constitute a series of acts connected together, severance of the charges is within the trial court's sound discretion." *Hammond v. State*, 273 Ga. 442, 446 (3) (542 SE2d 498) (2001) (charges of aggravated assault and terroristic threats concerning wife could be tried with charges of murder of son); *Camphor v. State*, 272 Ga. 408, 411 (3) (529 SE2d 121) (2000) (aggravated stalking of former wife could be tried with murder of former wife's boyfriend); *Wilcox v. State*, 271 Ga. 544, 545 (2) (522 SE2d 457) (1999) (possession of cocaine with

---

[2] The trial transcript states: "(Prospective jurors entered the courtroom. After the Pledge of Allegiance and prayer, the following proceedings occurred as follows:)." At oral argument before this Court, the assistant district attorney who prosecuted the case acknowledged the prayer was a "Christian prayer" and was delivered by a local minister after meeting with the trial judge.

intent to distribute could be tried with murder charges). Inasmuch as it is unlikely that the murder would have occurred but for the marijuana charges, the marijuana charges were inextricably bound to the murder and witness-influencing charges. *Hammond v. State*, supra; *Camphor v. State*, supra. Accordingly, the trial court did not abuse its discretion when it declined to sever the offenses for trial.

4. Appellant contends he is entitled to a new trial because the trial court denied his pre-trial motion for change of venue. Attached to the motion as evidence of prejudice within the community were copies of articles published by the local newspaper reporting the occurrence of the crime, the arrest of suspects, and the court dates of the arrestees, as well as a copy of the victim's published obituary and a published commemoration of his death a year later, and copies of two letters to the editor regarding continued support of the restaurant where the homicide took place. At the hearing on the motion, the trial court found the articles not inflammatory and agreed to revisit the issue should voir dire establish that a juror could not be fair and impartial.

> The trial court has the discretion to grant a change of venue and its discretion will not be disturbed absent an abuse of that discretion. [Cit.] "In a motion for a change of venue, the petitioner must show (1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible. [Cit.]" We cannot say the trial court abused its discretion when appellant: (1) made no showing that the setting of the trial was inherently prejudicial, i.e., that any publicity was factually incorrect, inflammatory, or reflective of an atmosphere of hostility; and (2) failed to demonstrate that [he] could not receive a fair trial due to the prejudice of individual jurors since [no] potential jurors were excused for having a fixed opinion about appellant's guilt . . . [cit.] [and the remaining prospective jurors who had been exposed to pre-trial publicity about the case indicated they could render a decision based on the evidence].

*Eckman v. State*, 274 Ga. 63, 68 (4) (548 SE2d 310) (2001). See also *McWhorter v. State*, 271 Ga. 461, 462 (2) (519 SE2d 903) (1999).

5. Appellant sees error in the trial court's denial of his motion to sequester the jury. "The decision to sequester jurors in a noncapital case is a matter within the sound discretion of the trial judge. OCGA § 15-12-142. Absent a showing of abuse of discretion, the trial court's decision will not be overturned." *Colantuno v. State*, 262 Ga. 830, 831 (1) (426 SE2d 563) (1993). For purposes of jury sequestration, a mur-

der trial in which the death penalty is not sought is a noncapital case. *Peppers v. State*, 261 Ga. 338, 340 (4) (404 SE2d 788) (1991). The trial court does not abuse its discretion in failing to sequester a jury in a noncapital case when, as here, the court instructs the jury not to discuss the case among themselves or with others during trial recesses. See *Bergeson v. State*, 272 Ga. 382, 383 (3) (530 SE2d 190) (2000); *Peppers v. State*, supra. Accordingly, appellant's enumerated error is without merit.

6. Appellant maintains the trial court erred when it admitted evidence of the arrests of appellant and the victim in Whitfield County for possession of the marijuana and methamphetamine found in appellant's car when a deputy sheriff stopped it. The victim's statement following the arrest was used to obtain the search warrant that uncovered the Gilmer County marijuana appellant was charged with possessing and provided the motive for appellant to attempt to influence the victim/witness and to kill the victim. "While motive is not an essential element in the proof of the crime of murder, the State is entitled to present evidence to establish that there was a motive [and] evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [Cit.]" *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (1990). See also *Collins v. State*, 273 Ga. 30, 31 (2) (538 SE2d 34) (2000).

7. Appellant also sees error in the trial court's admission of two pre-autopsy photographs of the victim's face showing the fatal wounds. Appellant asserts that the photos were cumulative of each other and were prejudicially inflammatory. "Photos depicting the location and nature of the victim's wounds are relevant and material and are admissible." *Williams v. State*, 266 Ga. 882, 883 (2) (471 SE2d 888) (1996). The trial court did not err when it admitted the photographs.

8. Appellant complains the trial court committed error when it declined to give appellant's requested charge on voluntary manslaughter. The trial court declined to charge on the subject because it saw no evidence to support the instruction. Voluntary manslaughter occurs when a person "causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. . . ." OCGA § 16-5-2 (a).

> A charge on voluntary manslaughter is required if "there [is] any evidence, however slight, to support a finding by the jury that the elements of the offense had been proved." [Cit.] Appellant testified he shot the victim because he feared the

victim was about to attack him . . . [,] and the trial court properly charged the jury regarding self-defense. There was no evidence that appellant shot the victim as the result of passion arising from a serious provocation. Nor was there any evidence that appellant was "so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself." [Cit.]

*Hale v. State*, 274 Ga. 863, 864-865 (3) (561 SE2d 70) (2002). The trial court did not err in declining to give the requested charge.

9. Appellant asserts he is entitled to a new trial because he did not receive effective assistance of counsel from trial counsel. Appellant maintains trial counsel was deficient because he failed to ask two of three panels of potential jurors about a murder that had occurred in Gilmer County a week before appellant's trial and because he failed to investigate a co-indictee's behavior following the victim's death. Trial counsel did not testify at the hearing on the motion for new trial. The trial court ruled that appellant had not presented anything that indicated ineffective assistance of counsel and opined that the complained-of actions were matters of trial strategy.

To establish a claim of ineffective assistance of counsel, a defendant must show that the attorney's performance was deficient and that the deficient performance prejudiced the defense. In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Where trial counsel does not testify at the motion for new trial hearing, it is extremely difficult to overcome this presumption. [Cit.]

*Rivers v. State*, 271 Ga. 115, 117 (2) (516 SE2d 525) (1999). We agree with the trial court that appellant did not carry his burden of establishing ineffective assistance of trial counsel. The content of trial counsel's voir dire of the jury venire can be a matter of trial strategy. See *Leon v. State*, 237 Ga. App. 99, 101 (1) (513 SE2d 227) (1999). Trial counsel may have investigated the co-indictee's behavior and concluded that it was not helpful to appellant. See *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002). Accordingly, the trial court did not err when it failed to grant appellant a new trial based on this ground.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2003.

*B.M. Martin & Associates, B. Morris Martin, Nancee E. Tomlinson*, for appellant.

*Roger G. Queen, District Attorney, William B. Britt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.