## S06A0276. GRIMES v. THE STATE.

(628 SE2d 580)

MELTON, Justice.

Following his convictions for malice murder, felony murder, armed robbery, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon, Dennis Jackson Grimes appeals, contending, among other things, that the evidence was insufficient to support the verdict for murder and armed robbery.[1] We affirm.

The record supports a finding that Grimes phoned his co-defendant, Adrian Tennison, and asked him to meet him at a certain Kentucky Fried Chicken restaurant on December 30, 2002. Around the time that Tennison and Grimes were scheduled to meet, Catherine Gambill attempted to make a daily deposit of her employer's proceeds at a bank nearby the Kentucky Fried Chicken. In the bank's parking lot, Grimes walked up to Gambill's van, mumbled something, and tried to open the van door, but moved away when Gambill said "no." When Gambill stepped out of the van, Grimes rushed at her with a handgun and demanded the money. Gambill threw the money on the ground. Grimes then retrieved it and ran through a wooded area to the adjacent parking lot where Tennison was waiting in his cream-colored Honda Civic. There, Grimes was witnessed hopping into the trunk of Tennison's car, and one bank patron followed Tennison's car and wrote down the tag number.

After the robbery, Tennison asked Grimes to get out of his car, and Tennison then went to the home of his cousin, Jason Stevens. While there, he called Ronnie Davis to take him to his home in Roberta, Georgia. Davis did so, and Tennison left his car at Stevens' home. Davis later told his sister that he knew that Tennison and Grimes had committed an armed robbery and he was fearful of imprisonment for his involvement. He further informed his sister that he intended to turn Grimes and Tennison in to the police for the armed robbery.

---

[1] On December 16, 2003, Grimes was indicted in Bibb County for armed robbery, aggravated assault, and possession of a firearm during the commission of the armed robbery of Catherine Gambill; as well as the malice murder and felony murder of Ronnie Davis, the aggravated assault of Wilbur Jackson, the possession of a firearm during the commission of the murder of Davis, and two counts of possession of a firearm by a convicted felon. On July 23, 2004, a jury found Grimes guilty of all charges except the aggravated assault of Jackson. On the same date, the trial court sentenced Grimes to life imprisonment for armed robbery, five consecutive years for each count of possession of a firearm during the commission of a crime, five concurrent years on each count of possession of a firearm by a convicted felon, and consecutive life imprisonment without possibility of parole for murder. Grimes filed a motion for new trial which was denied on April 20, 2005. His timely appeal was docketed on October 13, 2005, and submitted for decision on the briefs.

On May 25, 2003, police were called twice regarding altercations between Grimes and Davis at the latter's home. Later that evening, while sitting on his front porch with his neighbor, Davis was approached by a man in a black ski mask who shot him three times in the chest with a sawed-off shotgun. Davis died from the resulting wounds. The neighbor who was present during the murder testified that he believed that Grimes was the shooter because, even though he was wearing a mask, the shooter was the same size and had the same mannerisms as Grimes. Grimes later told his friend, Jane Duncan, that he murdered Davis, explaining that he had shot Davis in the chest to prevent him from telling the police that Grimes had murdered an antique store owner during a prior crime committed on January 20, 2003. Grimes also called Tennison to tell him that he killed Davis who would no longer be a problem, thereby implying that Grimes and Tennison need not worry that Davis would turn them in for robbing Gambill.

1. This evidence was sufficient to enable a rational trier of fact to find Grimes guilty beyond a reasonable doubt for all of the charged crimes, including armed robbery and murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Grimes contends that the trial court erred by admitting evidence of certain similar transactions. In its notice regarding similar transactions, the State listed three prior occurrences: (1) Grimes' 1985 guilty plea conviction for the armed robbery of a convenience store; (2) a 2002 incident in which Grimes and Tennison were stopped after following an armored car for some period of time; and (3) the unsolved murder of an antique store owner committed on January 20, 2003. The record shows that neither the armored car incident nor the antique store murder was ultimately offered and admitted as similar transactions. The armored car incident was never brought up during the trial, and the antique store murder was mentioned only by Duncan, who testified in part that Grimes told her that he murdered Davis because he was going to tell the police that Grimes committed the murder. Therefore, the shooting death of the antique store owner was properly admitted as proof of Grimes' motive for killing Davis, not as a similar transaction, and this relevant evidence was admissible despite the fact that it may have incidentally placed Grimes' character in evidence. *Davis v. State*, 272 Ga. 327 (2) (528 SE2d 800) (2000).

With regard to the armed robbery, it was properly offered to show Grimes' course of conduct and bent of mind. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). See also Uniform Superior Court Rule 31.3 (B). The trial court found the 1985 armed robbery to be admissible because, like the present crime, it involved the robbery of the proceeds of a business establishment through the use of a

handgun and was, therefore, sufficiently similar to the current armed robbery charges. The trial court did not abuse its discretion in this regard. *Williams*, supra. Moreover, even if the introduction of this similar transaction was erroneous, any error would be harmless, as the evidence that Grimes committed the armed robbery of Gambill was overwhelming and it is highly probable the error did not contribute to the judgment. See, e.g., *White v. State*, 269 Ga. 74 (2) (495 SE2d 278) (1998).

3. Grimes argues that the trial court erred by denying his motion to sever all counts involving the armed robbery of Gambill from all counts involving the homicide of Davis. A defendant has a right to severance of charges that are joined solely because they are of the same or similar character. *Stewart v. State*, 277 Ga. 138, 139 (587 SE2d 602) (2003). Severance, however, is not mandatory when one offense could be admitted upon the trial of another offense to show a common motive, plan, scheme, or bent of mind. Id. at 140. In this situation, severance is a matter for the trial court's discretion, and severance should generally be granted if it is

> appropriate to promote a fair determination of the defendant's guilt or innocence of each offense . . . consider[ing] whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Id. at 139.

In this case, the evidence supported a finding that Grimes murdered Davis, at least in part, because Davis was going to turn him in for the prior robbery of Gambill. The murder of Davis, therefore, may have been directly precipitated by the prior armed robbery. This supports the trial court's determination that severance was not required, as evidence of one offense could be admitted upon the trial of another offense to show a common motive, plan, scheme, or bent of mind. Furthermore, Grimes has failed to show either that severance was absolutely necessary to promote a just determination of guilt or innocence as to each offense or that the jury was unable to intelligently judge each offense due to the failure to sever. Therefore, the trial court did not abuse its discretion in this matter.

4. Grimes argues that the trial court erred by failing to bifurcate the charges of armed robbery, aggravated assault of Gambill, and possession of a firearm during the commission of the armed robbery from the charge of possession of a firearm by a convicted felon. In general, if the charge of possession of a firearm by a convicted felon is unrelated to any other count for which the defendant is to be tried, the

correct remedy is for the trial court to bifurcate the proceedings on a proper motion. *Head v. State*, 253 Ga. 429 (3) (a) (322 SE2d 228) (1984), overruled on other grounds, *Ross v. State*, 279 Ga. 365 (614 SE2d 31) (2005). Bifurcation is not warranted when a firearm possession charge serves as the underlying felony in a felony murder prosecution, as the firearm possession charge is material to the greater offense. *Bowden v. State*, 270 Ga. 19 (504 SE2d 699) (1998). In this case, the firearm possession charge was integral to Grimes' indictment for the felony murder of Davis, and all of the counts for which Grimes was charged were properly heard in a single proceeding without severance. Therefore, the trial court did not err by denying Grimes' motion for bifurcation.

5. Grimes contends that the trial court erred by allowing Davis' sister to testify pursuant to the necessity exception to the hearsay rule regarding statements her brother made to her prior to his murder which implicate Grimes. Hearsay may be admitted under the necessity exception only if it meets two requirements: necessity and particularized guarantees of trustworthiness. *Ward v. State*, 271 Ga. 648 (2) (520 SE2d 205) (1999). The necessity component is satisfied if the declarant is unavailable, the statement is relevant to a material fact, and the statement is more probative of that fact than other evidence which may be offered. Id. The trustworthiness requirement is satisfied if, under the totality of the circumstances, the declaration is "coupled with circumstances which attribute verity to it." Id. at 650 (2). Whether testimony was accompanied by particular guarantees of trustworthiness is a matter for the trial court's discretion. *Myers v. State*, 275 Ga. 709 (2) (572 SE2d 606) (2002). In the case before us, Davis was unavailable because he was deceased. The statements were relevant to show Grimes' motive for the murder, and they were trustworthy because Davis was confiding in his sister regarding his fear of being associated with the robbery committed by Grimes. *Ward*, supra at 650 (2) (uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom the declarant turned for help deemed admissible under the necessity exception). As such, the contested testimony was properly admitted.

6. Finally, Grimes maintains that the trial court erred by admitting certain items found during the search of his home because they were irrelevant. "The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court whose decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation and punctuation omitted.) *Joyner v. State*, 280 Ga. 37, 40 (622 SE2d 319) (2005). Following the commission of the crimes in issue, police searched Grimes' home pursuant to a valid warrant, and they discovered, among other things, a copperhead rifle scope, a gun holster, black gloves, two-way

radios, and a pack of AAA batteries. All of these items are of the type which might be employed in the commission of the crimes for which Grimes was charged. As such, the trial court did not abuse its discretion in ruling that the items were both relevant and admissible. Id.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 27, 2006.

*Renate D. Moody*, for appellant.

*Howard Z. Simms, District Attorney, Elizabeth K. Bobbitt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.