## S07A0127. WOOLFOLK v. THE STATE.
(644 SE2d 828)

MELTON, Justice.

Michael Jerome Woolfolk, Jr. appeals his convictions for the felony murder and aggravated assault of Jakesha Young.[1] Woolfolk's case arises from the same set of facts considered in *Stinchcomb v. State*, 280 Ga. 170 (626 SE2d 88) (2006), where we affirmed the conviction of Woolfolk's co-defendant, Mario Stinchcomb. There we set forth the relevant facts as follows:

> Viewed in the light most favorable to the verdict, the record shows that Jakesha Young was working as a prostitute in Fulton County. On November 6, 2002, she was called to a second-floor apartment by Stinchcomb. Michael Woolfolk, Max Stevens, and Randy Harris were also at the apartment. Shortly after Young arrived, she and Stinchcomb began to argue over the value of her services. Thereafter, Stinchcomb refused Young's request for money, and instructed her to leave. Angered, Young left the apartment and retrieved a gun from her car as Stinchcomb and Harris watched from the outside stairwell. Young then fired a shot in the air above the onlookers' heads. At that moment, Stinchcomb ran back to the upstairs apartment to get his gun. During this time, Young got into her car and began to drive away. When Stinchcomb reentered the apartment, he and Woolfolk began firing their guns at Young from the window. Woolfolk fired once before his gun jammed, and Stinchcomb fired three times. A bullet from Woolfolk's gun hit Young in the head and killed her while she was seated inside the car.

Id. at 171 (1).

1. Based on these facts, the jury was authorized to find Woolfolk guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

---

[1] Woolfolk was indicted on February 4, 2003 for the murder, felony murder, and aggravated assault with a deadly weapon of Jakesha Young. He was also indicted for aggravated assault on a peace officer. Following a jury trial, Woolfolk was convicted on April 16, 2004 of the felony murder and aggravated assault of Young, and he was acquitted of the remaining charges. On the same day, the trial court merged Woolfolk's conviction for aggravated assault into his felony murder conviction and sentenced Woolfolk to life imprisonment. Woolfolk's motion for new trial, filed on April 23, 2004 and amended on May 31, 2006, was denied on August 7, 2006. Woolfolk's notice of appeal was timely filed on August 7, 2006, and his appeal, docketed in this Court on September 21, 2006, was orally argued.

Woolfolk nonetheless contends that his conviction for the felony murder of Young cannot stand, arguing that the evidence demanded a finding that he acted in self-defense. Viewed in the light most favorable to the verdict, however, the evidence shows that Young was shot in the head after the confrontation had ended, she had retreated to her car, and was being driven away.

> Therefore, by the time that Woolfolk and Stinchcomb began shooting, there was no longer an imminent threat to them justifying the use of deadly force, and the jury did not err by rejecting [Woolfolk's] arguments that his actions were justified pursuant to the doctrine of self-defense. *Broussard v. State*, 276 Ga. 216 (2) (576 SE2d 883) (2003).

*Stinchcomb*, supra, 280 Ga. at 172 (1).

2. Woolfolk contends that the trial court erred by denying his motion to sever the count of aggravated assault against a peace officer from all remaining counts regarding the crimes committed against Young, maintaining that the crimes are wholly unconnected and dissimilar. This argument is misplaced.

The record shows that, after receiving a tip, a police officer located Woolfolk on the day after the murder, approached Woolfolk, identified himself as a police officer, and attempted to ask Woolfolk about the crime against Young. Woolfolk immediately fled, and as he did so, he pulled out the same gun he had used to murder Young. After the police officer fired at him, Woolfolk then attempted to throw away the gun as he continued to flee. "This Court has upheld joinder of two crimes when one crime is a circumstance of the arrest on the other crime." (Footnote omitted.) *Williams v. State*, 277 Ga. 368, 369 (3) (589 SE2d 563) (2003). Therefore, because Woolfolk's alleged crime of aggravated assault against a police officer was a circumstance of his arrest for the crimes against Young and directly related to that crime, the trial court did not abuse its discretion by denying Woolfolk's motion to sever these offenses under the facts of this case. Id. Moreover, evidence of Woolfolk's flight[2] and his possession and use of the handgun employed to murder Young would be admissible as evidence relating to the underlying murder, and "where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying the

---

[2] "Flight is always a circumstance which may be shown and a jury is authorized to take into account in determining guilt or innocence of an accused, and evidence thereof is not inadmissible because it incidentally puts the defendant's character in issue." *Hogans v. State*, 251 Ga. 242, 243 (1) (304 SE2d 699) (1983).

motion for severance." (Punctuation omitted.) *Johnson v. State*, 257 Ga. 731, 733 (2) (c) (363 SE2d 540) (1988).

Arguing that the trial court erred by denying the motion to sever, the dissent misapplies the standard set forth in *Benford v. State*, 272 Ga. 348 (528 SE2d 795) (2000). In *Benford*, we found that, where the defendant was on trial for murder, the trial court erred by admitting evidence that, at the time of his arrest over a month after the crime, the defendant possessed a weapon not used to kill the victim. To support this holding, we stated:

> [T]his Court has indicated that the admission of evidence which shows the commission of another crime may not automatically be admitted solely on the basis that the evidence was incident to an accused's arrest where the evidence is *wholly unrelated* to the charged crime, the arrest is *remote in time* from the charged crime, and the evidence is not otherwise shown to be relevant.

(Emphasis supplied.) Id. at 350 (3). *Benford* addressed only the admission of evidence of another crime where that evidence is "wholly unrelated" to the charged crime for which the defendant is being prosecuted. It is well established that evidence of flight is related to the underlying offense, see, e.g., *Hogans*, supra, and it also cannot be maintained that subsequent possession and use of the murder weapon has no relevance to the underlying murder. Therefore, *Benford* addresses a circumstance not present here and simply has no application to this case. It did not involve the joinder or severance of crimes in any fashion, and it certainly provides no basis for finding that the trial court erred in this case by refusing to sever the wholly related charge that, while being arrested within 24 hours for Young's murder, Woolfolk fled while in possession of the exact gun used to commit the murder and used that gun to commit aggravated assault on a pursuing police officer.

3. Woolfolk argues that the trial court erred by failing to find that the State improperly used its peremptory strikes against two African-American potential jurors, thereby violating the rules against racial discrimination set forth in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). In order to show a *Batson* violation, a defendant must prove that the State purposefully engaged in racial discrimination through its use of peremptory strikes. *Floyd v. State*, 272 Ga. 65 (3) (525 SE2d 683) (2000). On appeal, great deference must be extended to a trial court's determination that no *Batson* violation has occurred. Id. Following a defendant's showing of a prima facie case of racial discrimination, the reasons provided by the State to overcome any such presumption of racial discrimination must be

"concrete, tangible, race-neutral, and neutrally applied." *Ford v. State*, 262 Ga. 558, 560 (3) (423 SE2d 245) (1992). See also *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995). In some cases, however, "[a] trial court may . . . determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the strikes' proponent is so implausible or fantastic that it renders the explanation pretextual." (Citations omitted.) *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996).

With regard to the first potential juror, the State explained that it chose to strike her because she was not stable in her life. This reason appears to be concrete and race-neutral on its face. Woolfolk argues, however, that the reason was pretextual. As evidence of the juror's instability, the State pointed to the fact that Juror 3 was unemployed, a law school dropout, and she did not know where her husband, from whom she had been separated for two years, was located or what type of work he did. Although this testimony only questionably supports the State's reason for striking the juror, our standard of review requires that great deference be given to the trial court's determination that the State's reason was not so wholly fantastic as to be pretextual. Accordingly, we find that the trial court did not err by denying Woolfolk's *Batson* motion regarding this juror.

With regard to the second potential juror, the State explained that it struck him because he worked nights, appeared to be extremely fatigued, and actually slept through portions of the voir dire. This qualifies as a concrete race-neutral reason for striking this juror, and, as it is undisputed that the juror was, in fact, sleeping during voir dire, it cannot be said that the reason is either fantastic or implausible. Again, the trial court did not err. *Turner*, supra, 267 Ga. at 153 (2).

*Judgment affirmed. All the Justices concur, except Hunstein, P. J., who dissents.*

HUNSTEIN, Presiding Justice, dissenting.

I respectfully dissent to the majority's affirmance of the denial of Michael Woolfolk's motion for new trial because the record affirmatively establishes that the trial court used the wrong legal standard in assessing Woolfolk's motion to sever for separate trial one of the four counts for which Woolfolk was indicted; Woolfolk carried his burden of showing that he was prejudiced by the trial court's denial of his motion; and the evidence, although sufficient to uphold the verdict, was not so overwhelming as to render harmless the prejudicial effect of the improper joinder.

The first three counts of the State's four-count indictment charged Woolfolk with crimes arising out of the shooting death of Jakesha

Young on November 6, 2002. The fourth count charged Woolfolk with aggravated assault on a peace officer on November 7, 2002.[3] Woolfolk moved to sever Count 4, arguing that it involved a different victim on a different date and time, involved different witnesses and was totally unrelated to the transaction alleged in the other three counts. The trial court denied the motion in April 2004 and cited three cases in support of its ruling: *Roundtree v. State*, 270 Ga. 504 (511 SE2d 190) (1999), *Carter v. State*, 269 Ga. 420 (499 SE2d 63) (1998), and *State v. Luke*, 232 Ga. 815 (209 SE2d 165) (1974). Thereafter, all four charges were tried to a jury. Woolfolk presented a justification defense to the charges arising out of Young's death, testifying at trial that he fired the fatal shot only in response to Young's actions in shooting a pistol in his direction. As to Count 4, although Woolfolk in his testimony attempted to cast his confrontation with the police officer in terms of a justification defense, the officer testified to the contrary, claiming that after identifying himself and asking if they could speak, Woolfolk fled, pulled out a handgun and pointed the weapon at the pursuing officer. In closing argument, defense counsel relied, inter alia, on evidence that the officer was not wearing a standard police uniform and was masked at the time the assault occurred to assert that the State failed to prove Woolfolk was aware that the victim of his assault was a peace officer. The jury acquitted Woolfolk on the aggravated assault on a peace officer charge but convicted him on the felony murder charge and its predicate felony in regard to Young's death.

Notwithstanding his acquittal on Count 4, Woolfolk asserted on motion for new trial that the denial of his motion to sever required the grant of a new trial. Woolfolk argued there was a "prejudicial spill-over" of evidence that improperly undermined his justification defense to the murder charge, namely, that consolidation of the charges authorized the jury to consider the State's evidence of his unjustified assault on the officer against him when assessing his claim that he would never have shot Young except in self-defense. The trial court denied the motion and Woolfolk enumerates that ruling as error on appeal.

The majority resolves Woolfolk's enumeration of error against him by stating simply that because the alleged aggravated assault on a peace officer was a "circumstance of his arrest for the crimes against Young," the trial court did not err by denying Woolfolk's motion to sever. In support of this proposition, the majority quotes *Williams v. State*, 277 Ga. 368 (3) (589 SE2d 563) (2003), which, in turn, cites to

---

[3] Although the indictment reflected that the date of the alleged crime was November 6, the prosecutor conceded that the proper date was November 7 and the jury was so informed.

*Roundtree v. State*, supra, 270 Ga. at 506 (3). *Roundtree* is the most recent of the three cases cited by the trial court as its authority for denying the motion. Both *Roundtree* and the case it relies upon, *Carter v. State*, supra, 269 Ga. at 422 (3), involved the joinder of charges; the other case cited by the trial court (on which *Carter* also relies) was *State v. Luke*, supra, 232 Ga. at 815, which held that "all the circumstances connected with [a defendant's] arrest" are considered proper evidence to be submitted to the jury to be weighed by it for what they are worth. Id. at 816-817.

This Court, however, has expressly rejected the categorical approach taken in *Luke* to the admissibility of circumstances-of-the-arrest evidence. In *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000), we recognized that evidence is not rendered automatically admissible because it is a circumstance of a defendant's arrest. Rather, evidence regarding the circumstances connected with an accused's arrest is subject to the same standard of relevancy and materiality applicable to other evidence. See also *Adkins v. State*, 280 Ga. 761 (3) (632 SE2d 650) (2006); *Dukes v. State*, 273 Ga. 890 (4) (548 SE2d 328) (2001). *Roundtree*, *Carter* and *Luke*, as well as this Court's other cases that stand for the proposition that we will uphold joinder of charges when one offense arises out of the circumstances of the defendant's arrest for the other offense, see *Wilcox v. State*, 271 Ga. 544 (2) (522 SE2d 457) (1999); *Miller v. State*, 270 Ga. 741 (3) (512 SE2d 272) (1999),[4] all pre-date our holding rejecting the automatic admissibility of circumstance-of-arrest evidence. They likewise pre-date our holding rejecting the automatic joinder of offenses merely because evidence of those crimes would have been admissible as similar transaction evidence. *Stewart v. State*, 277 Ga. 138 (587 SE2d 602) (2003) (fact that evidence of one offense would be admissible in trial of another offense is relevant consideration in determining whether to sever, but does not end the inquiry because the trial court must still determine if severance of offenses would promote a fair determination of guilt or innocence as to each offense).

Just as this Court has rejected the automatic admissibility of evidence regarding the circumstances of an arrest, I would recognize that joinder of offenses is not automatically appropriate merely because one offense is allegedly a circumstance of a defendant's arrest for the other offenses.[5] I would find that the trial court manifestly abused its discretion when it denied Woolfolk's motion to

---

[4] See also *Wilson v. State*, 233 Ga. App. 688 (2) (505 SE2d 774) (1998); *Weaver v. State*, 206 Ga. App. 560 (1) (426 SE2d 41) (1992).

[5] Although *Williams*, supra, 277 Ga. at 369, intimated a disapproval of this categorical approach by referencing *Dukes v. State*, supra, 273 Ga. at 893, as a "see also" in its footnote 8 citing to *Roundtree v. State*, supra, 270 Ga. at 506, the severance issue in *Williams* was

sever based on outdated case law that authorized the automatic joinder of charges when one crime is a circumstance of the arrest on the other crime, rather than ruling on the motion under the well-established standard first set forth in *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975) to determine whether joinder of offenses was appropriate under the particular facts in this case.[6] Accordingly, because the majority inappropriately reinforces the discredited proposition of law on which the trial court relied, I dissent to the majority's holding that the denial of Woolfolk's motion to sever was proper merely because "Woolfolk's alleged crime of aggravated assault against a [peace] officer was a circumstance of his arrest for the crimes against Young." Majority opinion p. 140 (2).

Joinder may be proper under the facts of a case when the offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. *Dingler*, supra, 233 Ga. at 463. Even when these circumstances are present, however, the trial court is nevertheless required to consider whether severance should be granted when it is " 'appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.' " Id. In this case, the aggravated assault on a peace officer offense charged in Count 4 of Woolfolk's indictment was not part of a "series of connected acts" with the charges involving Young. Compare *Miller v. State*, supra, 270 Ga. at 743-744 (3); *Stewart v. State*, 239 Ga. 588, 589 (3) (238 SE2d 540) (1977) (proper to join offenses where crimes alleged were part of continuous transaction conducted over relatively short time and from nature of entire transaction "it would be almost impossible to present to a jury evidence of one of the crimes without also permitting evidence of the other"). Unlike the situation in *Carter v. State*, supra, 269 Ga. at 422 (3), Count 4 was not inextricably linked with the crimes against Young so that "it would have been impossible to present all of the relevant evidence regarding [Woolfolk's] involvement in the homicide of [Young] without also introducing evidence as to the circumstances of his arrest." Compare *Morgan v. State*, 276 Ga. 72 (3) (575 SE2d 468) (2003) (marijuana charges "inextricably bound" to murder and witness-influencing charges). Nor did the Count 4 offense provide motive for the crimes

---

addressed solely in the context of an ineffective assistance of counsel claim and no analysis was undertaken therein regarding the ramification of the change in the law, as reflected in *Dukes*, on joinder cases like *Roundtree*.

[6] *Carter*, supra, 269 Ga. at 422 (3), the first case to utilize circumstances of the arrest as the basis for joinder of offenses, does not even reference *Dingler*, supra, but instead relies on *Luke*, supra (applying the rationale discredited by *Benford*, supra) and *Catchings v. State*, 256 Ga. 241 (4) (347 SE2d 572) (1986) (applying the rationale discredited in *Stewart*, supra). The only other case cited in the pertinent division in *Carter* relied on case law that pre-dated *Dingler*.

against Young. Compare *Wilcox v. State*, supra, 271 Ga. at 545-546 (2) (cocaine possession charge arising out of arrest relevant to State's theory on other charges that defendant killed victim because of soured cocaine deal). Furthermore, Woolfolk's actions towards the police officer did not evidence any consciousness of guilt, given the absence of any evidence at trial that Woolfolk was aware at the time of the alleged assault on the officer that he had injured Young or anyone else the previous day with the one bullet he fired during the exchange of hostilities with Young. Compare *Sweet v. State*, 278 Ga. 320 (7) (602 SE2d 603) (2004) (evidence of circumstances of arrest admissible because relevant to show consciousness of guilt).

A review of the record reveals that the only possible connection between Count 4 and the other offenses is that the weapon allegedly used in Count 4 was the same weapon that fired the bullet that killed Young. We have upheld the admission of evidence that a defendant was arrested while in possession of the same weapon used in the charged crimes. See, e.g., *Smith v. State*, 276 Ga. 263 (4) (577 SE2d 548) (2003); *Dukes*, supra, 273 Ga. at 890 (4). See also *California v. Walker*, 246 P2d 1009, 1014 (Cal. App. 1952) (joinder of distinct offenses permissible if there is a "common element of importance in their commission," such as fact that "the appellant was armed with the same gun and the gun was used in each set of offenses"). However, the trial court did not deny Woolfolk's motion to sever because of the relevance of the evidence regarding the weapon, but rather because of the law authorizing the automatic joinder of offenses when one crime is a circumstance of the arrest on the other crime. In *Abdulkadir v. State*, 279 Ga. 122, 125, fn. 16 (610 SE2d 50) (2005), we cited *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002) for the proposition that a judgment that is right for any reason will be affirmed. However, that case also stands for the proposition that when a trial court makes a ruling "clearly based on a certain issue, although it did so incorrectly, the appellate court has no other ruling to examine." Id. at 838. In this case, the trial court clearly made its ruling based on outdated authority that joinder of all the offenses against Woolfolk would automatically be considered proper. Thus, it did not consider whether the relevancy of the connection created by the handgun would justify joinder; nor did it assess, assuming such a connection was created, whether severance was nevertheless " 'appropriate to promote a fair determination of the defendant's guilt or innocence of each offense.' " *Dingler*, supra, 233 Ga. at 463. Accordingly, I cannot conclude that the denial of Woolfolk's motion to sever was proper under this alternative theory.

Nor can I conclude that the trial court's error was rendered harmless because of the jury's acquittal of Woolfolk on the aggravated assault on a peace officer charge. In *Brown v. State*, 230 Ga. App. 190

(2) (495 SE2d 858) (1998), the Court of Appeals looked to this Court's holding in *Carter v. State*, 261 Ga. 344 (1) (404 SE2d 432) (1991) and concluded that it was required to analyze whether the defendant was harmed by the denial of a motion to sever a charge on which he was later acquitted, even though under older case law such an acquittal would have automatically rendered harmless any impropriety in the joinder of the offenses. Although the Court of Appeals was eminently correct in the conclusion it drew in *Brown*, it could not resolve the issue conclusively inasmuch as those older cases included an opinion from this Court.[7] Id. at 193, fn. 11; see also Art. VI, Sec. V, Par. III, Ga. Const. of 1983 (Supreme Court decision is binding precedent on Court of Appeals). Since *Carter* was rendered, this Court has failed to elucidate clearly its position on the issue.[8] It is thus not surprising that the Court of Appeals continues to apply the old standard. See, e.g., *Sirmans v. State*, 244 Ga. App. 252 (3) (534 SE2d 862) (2000). I would clarify the law by directly disapproving the principle that acquittal on the charge sought to be severed automatically renders harmless the denial of the severance motion. For that reason I would analyze Woolfolk's claim to see whether he was harmed by the joint trial on all four counts of his indictment.

A review of the evidence adduced at Woolfolk's trial reveals that he was harmed by the joint trial. In response to the State's position that Woolfolk shot Young in revenge as Young was in her car trying to leave the scene, Woolfolk testified at trial that he had no interaction with Young while she was in the apartment either before or after she argued with Stinchcomb over the price of her services; that he felt afraid for his life after Young, armed with a gun she retrieved from her pimp's car, fired in the direction of the apartment, because he believed Young had mistaken him for Stinchcomb and was trying to kill him; and that he was defending himself when, crouched down below the window sill, he put only his hand holding his gun out through a broken pane and fired a single shot blindly, unaware that his shot struck Young and fatally injured her. Several points of Woolfolk's testimony — the lack of interaction with Young, her initiation of the gun fight, Woolfolk's presence in the window in the area where Young shot, the single shot he fired while crouched under the window — were corroborated by witnesses for the State. However, his claim that he would not have fired at Young except to defend himself was directly undermined by testimony from the police officer as to Count 4 that

---

[7] I intimate no opinion whether that Supreme Court case actually stands for the proposition for which the Court of Appeals cited it.

[8] Our sole consideration of this issue since *Carter* is the passing comment within a footnote in *Wilcox v. State*, supra, 271 Ga. at 544, fn. 2, that an acquittal does not "necessarily" negate the prejudice from improper joinder.

Woolfolk was the aggressor in their confrontation. Although the jury acquitted Woolfolk on Count 4, the evidence at trial[9] and defense counsel's closing argument[10] suggest that this result was due to a reasonable doubt whether Woolfolk knew the victim of his assault was a peace officer.

Had the Count 4 offense been severed, Woolfolk could have testified regarding his defensive actions in response to Young's behavior without explaining his aggressive actions in response to the police officer's pursuit. Woolfolk could have presented his justification defense without pitting his credibility against that of the police officer, thereby depriving the prosecutor, in closing argument, of the opportunity to emphasize the contradictions between their testimony.[11] Based on my review of the evidence, I conclude that the posture of Woolfolk's defense could well have been dramatically different had the severance motion been granted, see *Carter v. State*,

---

[9] The officer testified that he was dressed in a narcotics squad raid uniform, arrived in an unmarked van, exited the vehicle and looked Woolfolk directly in the eye. Woolfolk made no response to the officer's brief statement ("Atlanta Police, let me talk to you for a second") but instead ran, with the officer some 15 to 20 yards behind in pursuit. The officer was too far away to see if Woolfolk's finger was on the trigger when Woolfolk pointed the gun in the officer's direction.

[10] Defense counsel stressed that while the State called a rebuttal witness in response to Woolfolk's testimony regarding certain aspects of the charges involving Young, the State did not recall the officer regarding Count 4 to rebut Woolfolk's testimony that the officer was wearing a mask and dressed in black:

> Because you know why? He told you he was a drug agent. That's to protect the identity. Because they do drug enforcement and they help other officers serve warrants. They help with take downs. He jumped out there with that mask on. [The officer] didn't have on the uniform and [Woolfolk] told you that. Now, why didn't they bring [the officer] back to say so? You know, because [the officer] would have to admit he had that mask on. . . . [The State] could not rebut [Woolfolk's testimony] because they did not want to risk bringing [the officer] back so you would now know that guy had on a ski mask and he had on an all black outfit and not looking like a police officer. He was in an unmarked car. They didn't want nobody to know who they are.

[11] The prosecutor stated, inter alia, that:

> You are going to hear about credibility of witnesses. . . . I suggest the first thing you consider in credibility of witnesses is have they lied? Have they lied? Are they admitting to lying several times and you can tell they are lying about other things? That's the first thing I would consider.
>
> Second is the probability . . . or improbability of what they testified to. In other words . . . , did that really happen. Can you see that really happened. Because when Mr. Woolfolk says that that police officer got out not wearing a uniform but dressed like a gang member in nothing [but] black and a black jumpsuit, and that — and a ski mask and that's how he went to do this arrest. . . .
>
> Now, the judge will tell [you] that Mr. Woolfolk is not required to put up any evidence at all. But we can tell what evidence the defense thinks is best by what they put up. And the defense that Mr. Woolfolk thinks is better, the evidence he thinks is better than anything else is a liar. Him. The best evidence in the world to him is a liar. That's all he put up. . . . That's the best they have. And that is who they want you to believe over the Police Officer. . . .

supra, 261 Ga. at 345 (1); *Brown v. State*, supra, 230 Ga. App. at 194 (2); moreover, I conclude that Woolfolk demonstrated that he was prejudiced and placed at an unfair disadvantage by the joinder of these offenses.[12] See *Haisman v. State*, 242 Ga. 896 (252 SE2d 397) (1979) (refusal to sever reversible error where, despite common element that both murder victims were family members, no common scheme or plan could be inferred behind the homicides); *Booker v. State*, 231 Ga. 598 (1) (203 SE2d 194) (1974) (severance required where separate crimes did not arise out of same conduct, did not involve same victims or witnesses and evidence of one crime would not be admissible on trial of other). See generally *Dingler*, supra, 233 Ga. at 463 (severance sought where joinder would put defendant at unfair disadvantage). Therefore, I would hold that Woolfolk carried his burden of showing, notwithstanding the acquittal on Count 4, that severance was necessary to promote a just determination of his guilt or innocence as to each of the charged offenses. Compare *Grimes v. State*, 280 Ga. 363 (3) (628 SE2d 580) (2006).

For the above reasons I respectfully dissent to the majority's affirmance of the judgment entered on Woolfolk's convictions.

DECIDED MAY 14, 2007 —
RECONSIDERATION DENIED JUNE 5, 2007.

*Dwight L. Thomas, James B. Sheffield*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General*, for appellee.

---

[12] Because Count 4 involved entirely different witnesses than the other counts, this is not an instance in which separate trials would have impaired either the efficiency or the fairness of the criminal justice. See, e.g., *Richardson v. Marsh*, 481 U. S. 200, 210 (107 SC 1702, 95 LE2d 176) (1987) (joinder appropriate to avoid separate proceedings with prosecutors presenting same evidence again and requiring victims and witnesses to repeat the inconvenience and trauma of testifying).