## ELLIOT *v*. THE STATE.

1. It is not error for the judge to charge the jury, on the trial of one indicted for murder, that "The defendant is presumed by law to be innocent, and that presumption remains with him until his guilt is established (in the case of circumstantial evidence, such as is true in this case) by evidence consistent with his guilt and inconsistent with his innocence, and which establishes his guilt to the exclusion of every other reasonable hypothesis save that of his guilt of the crime charged against him," it being manifest that the use of the language, "such as is true in this case," was not an expression of the court's opinion that the defendant's guilt was established by circumstantial evidence, but, instead, that it was true that the case for the State was based upon circumstantial evidence.

2. It is inaccurate, but not cause for new trial in this case, for a judge to charge the jury, on the trial of one accused of murder, in the following language on the subject of impeachment: "The court instructs you, when a witness is successfully impeached as to a material matter, his credit as to other matters is for the jury. It is a question of fact to be determined by the jury solely, whether a witness has been impeached or not. A witness is impeached only when his unworthiness of credit is absolutely established in the minds of the jury."

3. Where one is on trial charged with murder, and the State relies upon circumstantial evidence for conviction, it is not error for the court to charge the jury: "If you believe from the evidence in the case that such evidence is consistent with the guilt of the defendant and inconsistent with his innocence, and that the same establishes his guilt to the exclusion of every other reasonable hypothesis except, as stated, his guilt of the crime charged against him, you would be authorized to find the defendant guilty."

4. The verdict is supported by the evidence.

APRIL 9, 1912.

Indictment for murder. Before Judge Thomas. Fulton superior court. February 17, 1912.

*Anderson, Felder, Rountree & Wilson,* for plaintiff in error.

*T. S. Felder, attorney-general,* and *Hugh M. Dorsey, solicitor-general,* contra.

HILL, J. Lucky Elliot was found guilty of the crime of murder, and, on recommendation of the jury trying him, sentenced to life imprisonment in the penitentiary. His motion for new trial having been overruled by the court, he excepts, and assigns as error certain portions of the judge's charge to the jury, and that the verdict is contrary to law, contrary to the evidence, and without evidence to support it, etc.

1. The first ground of the amendment to the motion for new trial alleged error because of the following charge of the court to the jury: "The defendant is presumed by law to be innocent, and that presumption remains with him until his guilt is established (in the case of circumstantial evidence, such as is true in this case) by evidence consistent with his guilt and inconsistent with his innocence, and which establishes his guilt to the exclusion of every other reasonable hypothesis save that of his guilt of the crime charged against him." It is contended by the plaintiff in error that the use of the words, "such as is true in this case," was an expression of opinion on the part of the court as to the facts in the case; that this was an expression of his opinion that the defendant's guilt was established by circumstantial evidence. Rightly con-

strued, we do not think the trial judge intended to express an opinion as to the guilt of the defendant being established by circumstantial evidence, but, instead, the clear intent and meaning of the court was that the case against the defendant was based upon circumstantial evidence, and it was true, as contended, that the State relied upon circumstantial evidence for conviction. While the principle stated in this excerpt from the charge was inaptly expressed, the meaning we give to it is evident from reading the context, and it could not, we think, have misled the jury into supposing that the court had expressed his opinion to the effect that the defendant's guilt was established by the circumstantial evidence offered by the State in the case on trial.

2. The fifth and sixth grounds allege error in the same charge of the court on the question of impeachment of witnesses, and will be considered together. The charge complained of is as follows: "The court instructs you, when a witness is successfully impeached as to a material matter, his credit as to other matters is for the jury. It is a question of fact to be determined by the jury solely, whether a witness has been impeached or not. A witness is impeached only when his unworthiness of credit is absolutely established in the minds of the jury." The charge of the court is undoubtedly inaccurate, at least where he uses the words "successfully impeached" for "successfully contradicted," as employed by the Civil Code, § 5884; yet we can not say that the charge, taken as a whole, was calculated to mislead the jury and prejudice the defendant's rights, and was cause for the grant of a new trial. The decisions in *Powell* v. *State,* 101 *Ga.* 19 (29 S. E. 309, 65 Am. St. R. 277), *Smith* v. *State,* 109 *Ga.* 479 (35 S. E. 59), *Rouse* v. *State,* 136 *Ga.* 356, 361 (71 S. E. 667), *Ector* v. *State,* 120 *Ga.* 543 (48 S. E. 315), and *Stafford* v. *State,* 55 *Ga.* 592 (4), defining what is meant by "successful impeachment," were dealing with the question as to whether the witness, as a witness, had been so discredited with the jury as to be unworthy of credit as a witness entirely. They were not dealing with the fact that the jury might disbelieve a witness as to a particular fact, or state of facts, and that it might be proved that the witness had not told the truth as to that particular fact, or particular set of facts, and yet they might give credit to the witness as to other facts. In the code it is said that when a witness is successfully contradicted as to a material

fact, his credit as to other matters is for the jury. The Civil Code, § 5880, declares that a witness may be impeached by disproving the facts testified to by him; but it also recognizes that impeachment in this method as to certain facts does not necessarily exclude the jury from believing him as to other facts testified to. The one is dealing with the fact that it is possible that there may be such a thing as successful contradiction, or impeachment, in part, or as to certain things, without necessarily destroying the credit of the witness in toto; while our decisions, relating to the technical meaning of successful impeachment, were dealing with the impeachment of a witness as a whole—the breaking down of the credibility of the witness, so as to destroy the force of anything he says; and when the jury believes that the witness is so broken down and so impeached that everything that comes out of that origin is from an incredible source, then the whole ought to be rejected, unless it is corroborated from a pure and unimpeached source. But these decisions did not deal with the point that the code.recognizes "successful contradiction," and hence a possibility of "successful impeachment," which does not necessarily reach to the testimony of the witness in toto, but only reaches to certain facts to which he has testified. The Civil Code, § 5884, recognizes the fact that the jury may disbelieve a witness and not credit him as to one fact testified to by him, without necessarily disbelieving him in toto. That feature was not discussed or presented in these previous decisions, which were dealing with the credibility of a witness, and not the credibility or overthrowing of certain parts of his testimony. The judge's charge in this case was unfortunate in using the word "impeachment," which is a word susceptible of two kinds of meaning, that is, of successful impeachment, or of a successful attack in part; and it would have been better to have followed the language of the code. Nevertheless, taking his two instructions together, the charge means about this: If you believe that this witness has been successfully impeached, that is, found unworthy of credit as to certain facts—not as a whole, but that her credit as to certain particular facts that she has testified to has been overcome, so that you do not believe what she says on that subject,—nevertheless, what credit you will give her, if any, as to the other facts is open to you. And he did not charge, in the first part objected to, that if a witness is successfully impeached the jury may nevertheless

believe her; he simply said, if she is successfully impeached as to some material matter. Therefore he did not mean by that to instruct the jury that if the witness is altogether unworthy of credit they may yet credit her, but he evidently meant that if the attack on her testimony as to certain parts thereof is successful, nevertheless there may be other parts in which the jury may believe her, and he was dealing with the question of overcoming, or disproving, or not believing some part of her testimony. He was not charging on the question which is dealt with in the cases dealing with successful impeachment; and while his language was not as apt or accurate as it should have been, taken in connection with the statement that if she is successfully impeached as to a material matter, it is pretty evident that he simply meant that if the jury found the evidence was such that they could not believe her evidence as to this fact—not that she was impeached as a whole, but if she was successfully impeached as to that fact—if they did not believe her testimony on this point, still they might believe her on other points. If we may coin an expression, he was instructing the jury about partially successful impeachment; of successful impeachment as to one fact, and not as to unworthiness to be believed at all. He was instructing the jury about that kind of impeachment, and taken in its proper sense it is evident that that is what he meant. He meant that the successful overthrowing of a witness as to one fact did not destroy the jury's right to believe her as to other facts. But he was not dealing with the question of overthrowing her credit as a witness as a whole, and was not using the words "successful impeachment" in that sense. Although we have spoken of that as a technical meaning of it, yet we have never coupled it with successful impeachment as to one material fact as meaning successful impeachment of the whole testimony. The difference between the judge and the code was "successfully impeached," instead of "successfully contradicted" as to a material fact; but taking the two together, it is evident that he was instructing the jury on the question of attacking her testimony on one material point, and not as to her whole testimony.

3. It is insisted that the court committed error in giving the jury the following charge: "If you believe from the evidence in the case that such evidence is consistent with the guilt of the defendant and inconsistent with his innocence, and that the same establishes

his guilt to the exclusion of every other reasonable hypothesis except, as stated, his guilt of the crime charged against him, you would be authorized to find the defendant guilty." Movant contends that this charge was erroneous, for the following reasons: (1) it was not a statement of a correct rule of law applicable to the facts of the case; (2) because the jury were instructed that they would be authorized to find the defendant guilty if they believed that the evidence was consistent with the guilt of the defendant and inconsistent with his innocence, and if they believed that the same established his guilt to the exclusion of every other reasonable hypothesis except, as stated, his guilt of the crime charged against him; (3) because neither in the excerpt from the charge quoted nor in any other portion of the charge did the court instruct the jury the rule as to reasonable doubt; that is to say, that they could not find the defendant guilty unless there was "sufficient testimony to satisfy the mind and conscience beyond a reasonable doubt;" (4) because the court should have charged the jury the rule as to circumstantial testimony and the rule as to reasonable doubt; (5) because in the excerpt quoted, and after the word "believed," the court should have inserted the words "beyond a reasonable doubt." While we think it is better to give both sections of the code (§§ 1012 and 1013) in charge to the jury, and, in cases where circumstantial evidence is relied upon for conviction, also to give § 1010, this court ruled in the case of *Bone* v. *State,* 102 *Ga.* 387 (30 S. E. 845), that where the judge correctly charged the law of reasonable doubt, it was not cause for new trial that he added in that connection an instruction similar to the one now under review, "it being apparent from the instructions as to reasonable doubt, taken altogether, that the judge intended to convey to the jury the idea that the reasonable and moral certainty of guilt to which he referred was mental conviction excluding any reasonable doubt of guilt."

4. The verdict is supported by the evidence. And even if the testimony of Carrie Moncrief, the witness whose testimony it was sought to impeach, and on whom the State relied largely for conviction, is excluded, there is sufficient evidence still left to sustain the verdict. The evidence shows that the defendant, Lucky Elliot, had Ida Fergerson, the deceased, for his mistress; that on the evening before her death she went to the house where Lucky boarded,

though she was an entire stranger there. She remained in the room with the defendant and others, all drinking beer (except Ida Fergerson), and talking until she left the house in company with Elliot, about 11.30 p. m. One witness heard the defendant tell the deceased before they left the house that he ought to have killed her "on account of her low-down ways." Soon after the defendant and deceased left the house one witness heard some one holloa, "Oh!" This noise came from the direction in which the blood was found, about 167 feet from the house they had just left. The dead body of Ida Fergerson was found next morning near the house she and the defendant had left at 11.30 o'clock. Her throat was cut, and she had been dragged·a short distance from where the blood was found, and thrown down an embankment. A knife was found 79 feet from the dead body, where it had been thrown into a gully. The knife was bloody and was identified by several witnesses as the knife of defendant. · There were tracks on the embankment over which the knife was dropped. The tracks turned right back towards the house from where the knife was lying. Next morning the defendant said to some of the inmates of the house where he boarded, "Don't we be talking too much," or "Don't we say anything about what passed here last night." On the Saturday after the homicide the defendant denied knowing Ida Fergerson at all. He admitted afterwards that he knew her and said, "I know her all right, I just lied about it."

*Judgment affirmed. All the Justices concur.*