### 30217. PEEBLES v. THE STATE.

PER CURIAM.

Elvin Peebles was convicted of murder and robbery by force and sentenced to life imprisonment. Appellant's motion for new trial was denied, and he files this appeal.

The evidence disclosed that on December 19, 1974, between 8 and 9 p.m. Mr. Clifton, an 86-year-old man, was attacked in his home and robbed by an assailant with a claw hammer. The next morning at approximately 8 a.m. Mr. Clifton with head wounds appeared at neighbor Brantley's house, gave him a phone number and asked him to call his son. Mr. Clifton was led back to his home where Mr. Brantley and a neighbor asked him several times who had assaulted him. Each time he replied that he could not recall the assailant's name. It was not until later that morning that he identified the assailant as ". . . Roscoe Peebles' baby boy." At the hospital emergency

room, appellant was taken to Mr. Clifton's bedside by police officers who testified that Mr. Clifton said, "That's him, boy, where's my money." Mr. Clifton remained in the hospital for one week when he was transferred to a nursing home where he died on January 2, 1975.

Mr. Brantley testified that at around 8 p.m. on December 19, 1974, he noticed a bicycle in front of Mr. Clifton's home. He testified to conversing with someone from Mr. Clifton's house whom he could not see, although he did in court identify the voice as appellant's. A witness for the state testified that he owned the bicycle seen at the deceased's house; that he loaned it to appellant on December 19 around 4:30 p.m., and did not see it again until it was in custody of the police.

Appellant was arrested and taken to jail where he was asked to remove his shoes and clothes. One shoe, a shirt and a sanitary napkin found on appellant were found to contain human blood, type O. The deceased's and appellant's blood were shown to be type O. Appellant testified that before his arrest he had helped a small boy who had fallen. The boy's mouth was bleeding, and appellant testified to wiping his face. The boy's blood was type O.

In support of the defense of alibi Laura Pendergrass and her brother and two sisters testified that appellant was at the Pendergrass home from 7:30 p.m., December 19 until the next morning. They all placed appellant at the house except for three short trips to a nearby store and one trip to his house next door. Calvin Caruthers, a young boy, testified that on the evening of the nineteenth he carried groceries for appellant from the store to the Pendergrass house. Thereafter, he went with appellant to a nearby restaurant. An employee of the restaurant saw appellant and the boy in the restaurant just before dark on December 19. A grocery store employee saw appellant in the store on December 19 around 7:30 to 8:00 p.m. and again around 9:30 p.m.

1. Appellant enumerates as error the admission into evidence of the victim's accusatory statement made at the hospital in appellant's presence. Appellant objected to the testimony as hearsay; however, the trial court admitted the evidence as being a statement made in the presence of

the accused.

This testimony was not inadmissible as hearsay, but was admitted for the purpose of showing that the victim identified the accused as his assailant. Testimony as to the fact that the accused is identified is not inadmissible hearsay. *Goughf v. State,* 232 Ga. 178 (205 SE2d 844) (1974); *Martin v. State,* 225 Ga. 234 (167 SE2d 638) (1969); *Montos v. State,* 212 Ga. 764 (95 SE2d 792) (1956).

The enumeration of error is therefore without merit.

2. Appellant next enumerates as error the admission into evidence, over objection, of hearsay testimony of state witnesses concerning statements made by the victim the next morning at his home identifying appellant as his assailant. The trial court admitted the evidence under the res gestae exception to the hearsay rule. Code Ann. § 38-305. In our opinion these statements were definitely hearsay testimony and should have been excluded. Tested by well-established rules concerning the res gestae exception, this evidence was not free from suspicion of afterthought but was rather in the nature of narrations of past transaction. The statements were made some twelve hours or more after the assault, giving the victim more than ample time to reflect on the occurrence. It is apparent that the victim's statements were made deliberately and were not spoken as a part and parcel of the assault. See *Western & A. R. Co. v. Beason,* 112 Ga. 553, 557 (37 SE 863) (1901). There was no evidence that the deceased had been in a coma or a state of shock from the time of the attack until he went to a neighbor's house the next morning. The state cites *Salleywhite v. State,* 133 Ga. App. 170 (210 SE2d 334) (1974), but in that case the victim was found in a state of shock and made a statement within an hour of the assault.

The improper admission of this hearsay testimony was prejudicial to the appellant's defense and the trial court erred in failing to grant the appellant's motion for new trial. Even though other evidence of identification was allowed as set forth in Division 1 of the opinion, it cannot be said that this damaging additional identification evidence was harmless.

3. Appellant's next enumeration of error complains that the circumstantial evidence produced at trial is

insufficient to exclude every other hypothesis except his guilt. This contention is without merit. The verdict was authorized by the evidence.

4. There is no merit to appellant's contention that the trial court erred in charging the jury on both circumstantial evidence and reasonable doubt. Where the trial produces both direct and circumstantial evidence, a charge on both standards of guilt is authorized. *Elliot v. State,* 138 Ga. 23, 28 (74 SE 691) (1912). Here, direct evidence in the form of an identification was before the jury. See *Bryan v. State,* 74 Ga. 393 (1) (1884).

*Judgment reversed and new trial ordered. All the Justices concur, except Gunter and Jordan, JJ., who concur specially, and Nichols, C. J., Undercofler, P. J., and Hall, J., who dissent.*

SUBMITTED AUGUST 15, 1975 — DECIDED JANUARY 27, 1976.

*W. L. Salter, Jr.,* for appellant.

*H. R. Thompson, District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Assistant Attorney General,* for appellee.

JORDAN, Justice, concurring specially.

I would reverse for the additional reason that the testimony of the police officers quoting verbatim the victim's statement made at the hospital in appellant's presence while in police custody was clearly hearsay and inadmissible. The line of cases cited in Division 1 of the per curiam opinion are not applicable to this situation inasmuch as they deal with situations where the state's witness merely testified to the fact of identification without attempting to quote the words and language used by the identifying person. See *Montos v. State,* 212 Ga. 764 (6) (95 SE2d 792) (1956).

Neither was the testimony admissible under Code Ann. § 38-409 as an implied admission resulting from the appellant's silence in the face of an accusatory statement. The statement attributed to the victim was made while the appellant was under arrest at which time he was under no obligation to make any statement or to

contradict any accusatory statements made in his presence. The Fifth Amendment not only gives an accused the right to refuse to make a statement, as it might tend to incriminate him, but it gives him the right while under police custody to remain silent when another makes accusatory statements in his presence. United States v. Rodriguez, 498 F2d 302 (5th Cir., 1974); United States v. Brinson, 411 F2d 1057 (6th Cir., 1969); Ivey v. United States, 344 F2d 770 (5th Cir., 1965). The use of silence while under police arrest as an implied admission is a constitutionally forbidden penalty for exercising a constitutional privilege. Griffin v. California, 380 U. S. 609, 615 (85 SC 1229, 14 LE2d 106) (1965).

I am authorized to state that Justice Gunter concurs in this special concurrence.

UNDERCOFLER, Presiding Justice, dissenting.

I respectfully dissent from Division 2 and the judgment of reversal. In my opinion the victim's statements were spontaneous declarations which were admissible under the res gestae rule. See Green, Georgia Law of Evidence (1957), §§ 289, 290.

The victim was 86 years of age. He received severe injuries to his head sometime after 8:00 p.m. At 8:00 a.m. the next morning he appeared at his adjoining neighbor's apartment. He was clothed, had deep gashes on his head, appeared to be in desperate physical condition, and was "bloody all over." He stated he was dying and asked the neighbor to call his son. He said not to call a doctor or police until his son arrived. About 20 - 30 minutes later when his son arrived he identified the defendant as having attacked him in his kitchen with a claw hammer about 9:00 p.m. the previous night.

The majority opinion places too much emphasis on the lapse of time between the attack and the utterances. In determining whether the utterances are spontaneous and admissible the totality of the circumstances of the event must be considered. As stated with approval in Mitchum v. State, 11 Ga. 615, 627 (1852), ". . . it is impossible to tie down to time the rule as to the declarations. We must judge from all the circumstances of the case. We need not go the length of saying that a

declaration made a month after the fact, would itself be admissible. But if, as in the present case, there are connecting circumstances, it may even at that time form a part of the whole res gestae." See VI Wigmore on Evidence, 3d Ed., p. 154, § 1750.