## A01A0599. MONTEAGUDO v. THE STATE.

(545 SE2d 351)

MIKELL, Judge.

Alexi Monteagudo was convicted of burglary by a Lowndes County jury.[1] On appeal, Monteagudo challenges the sufficiency of the evidence and claims error in the trial court's denial of his motion for a directed verdict of acquittal and motion for a new trial. Because we find that the evidence was sufficient to authorize the jury's finding of Monteagudo's guilt beyond a reasonable doubt, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. To sustain the conviction, the evidence must be sufficient to authorize the jury's finding of the defendant's guilt of the crime charged beyond a reasonable doubt.[2]

The standard of review for the denial of a motion for directed verdict of acquittal or a motion for new trial is the same as that utilized under *Jackson v. Virginia*[3] when the sufficiency of the evidence is challenged.

This case involves four defendants, Monteagudo, Ernesto Romero, Caesar Fuentes, and Victor Lopez, all of whom were charged with burglary and tried simultaneously.[4] Viewed most favorably to the verdict, the evidence shows that at approximately 10:30 p.m. on July 10, 1997, Deputy Sheriff Jeff Culpepper discovered a burglary in progress and observed two suspects running away from the scene. He called for backup, and Sergeant Bruce Barnes responded to his call.

Sergeant Barnes observed a van that was backed up to a loading dock behind a store, several empty cardboard boxes on the dock, and several items of clothing in the back of the van. When he and Deputy Culpepper entered the store to search for the suspects, they noticed a door handle had been broken off and was lying on the floor, but did not find the suspects. An employee of the store testified that the

---

[1] Two of Monteagudo's three co-defendants, Caesar Fuentes and Ernesto Romero, were also convicted, and filed separate appeals. We affirmed Fuentes' conviction at *Fuentes v. State*, 239 Ga. App. 672 (521 SE2d 698) (1999), and Romero's conviction at *Romero v. State*, 247 Ga. App. 724 (545 SE2d 103) (2001).

[2] (Citations and punctuation omitted.) *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] Lopez was acquitted.

clothing in the van had been taken from the store and had a retail value of approximately $77,000.

A hotel was located approximately 2,100 feet from the store where the burglary took place. Allen Fowler, the hotel desk clerk, testified that at approximately 10:40 p.m. on July 10, 1997, he observed two men, who appeared to be hot, sweaty, and out of breath, as they walked toward the hotel office. The desk clerk on duty testified that Fuentes and another man checked in at approximately 10:44 p.m. The hotel manager testified that the man who checked in was the same person depicted on Fuentes' driver's license, and that the rate Fuentes was charged was for two occupants.[5] He also testified that before the men checked in, someone from the sheriff's department informed them of the incident at the store and asked to be contacted if someone approached the hotel on foot or otherwise appeared suspicious. Because he noticed that Fuentes and his companion did not have luggage or a means of transportation upon check-in, the manager called the sheriff's department.

On the morning of July 11, 1997, Deputy William Jones, who speaks Spanish fluently, was called to the hotel by the detectives who were investigating the burglary to speak to Fuentes and Romero. He testified that Fuentes told him that they had been stranded by friends and were waiting for his wife to travel from Miami, Florida, to get them. Fuentes could not name his friends but told Deputy Jones that they were in a van.

The officers followed Fuentes and Romero to their hotel room, which Fuentes gave them consent to search. Fuentes appeared very nervous as he tried to insert the key card into the door. On his second or third attempt, Fuentes opened the door, and the officers observed Lopez and Monteagudo lying on the bed in the room. Deputy Jones testified that there was no luggage in the room. Upon learning that the van that was found at the scene of the crime was registered to Monteagudo, the officers arrested all four of the men.

Deputy Jones testified that Monteagudo waived his *Miranda* rights at the jail and told him that they had all traveled from Miami to Valdosta to see a friend, but the van had been stolen during the night. Also, Monteagudo told them that when he checked into the hotel at approximately 10:45 p.m. on July 10, 1997, his van was with him. When Monteagudo was asked to explain how his van was found at the scene of the crime at the same time, he invoked his right to silence and requested an attorney. Finally, Romero's and Fuentes' fingerprints were recovered from a cardboard box at the scene and

---

[5] The check-in folio from which the hotel manager testified indicated a check-in date of July 11, 1997. Both Fuentes and Monteagudo, however, admitted that they spent the night of July 10, 1997, at the hotel.

from Monteagudo's van.

1. Monteagudo contends that the evidence is insufficient to sustain his conviction. He argues that there is no evidence that he was actually present at the crime scene, only that his van was used in the crime. We reject Monteagudo's argument.

Though there was no evidence that Monteagudo was at the scene of the crime, a suspect's "presence, companionship, and conduct before and after the offense are circumstances from which [that suspect's] participation in the criminal intent may be inferred."[6] Further, "the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[7] In this case, Monteagudo's presence, companionship, and conduct before and after the crime supported an inference of his criminal intent.

Monteagudo stated that all four men traveled from Miami together to visit a friend, yet they had no luggage. Monteagudo told the officers that he had his van when he checked into the hotel. The evidence showed, however, that at the time he checked in, the van was at the scene of the crime. All four of the co-defendants occupied the same hotel room. Fuentes said that Monteagudo and Lopez left him and Romero stranded at the hotel, when the evidence showed that shortly thereafter, the officers discovered Monteagudo and Lopez in the hotel room. Finally, Fuentes' and Romero's prints were recovered at the scene. Accordingly, the evidence was sufficient to authorize Monteagudo's conviction.[8]

2. Monteagudo argues that the denial of his motion for directed verdict of acquittal and motion for new trial constituted error for two reasons: (1) the evidence was insufficient to sustain his conviction for burglary; and (2) the state could only argue that he was a party to the crime, but had not indicted him of that offense. This argument is without merit.

As stated earlier, the evidence of Monteagudo's presence, companionship, and conduct before and after the offense authorized his conviction. Furthermore, the state may prove a defendant's culpability for a crime as a party to that crime even though the defendant is not charged with the offense of "party to a crime."[9] In this case, there was evidence to support the state's argument that Monteagudo was guilty of burglary. Accordingly, the trial court's denial of Montea-

---

[6] (Citation and punctuation omitted.) *Stokes v. State*, 232 Ga. App. 232, 233 (1) (501 SE2d 599) (1998).

[7] (Citations and punctuation omitted.) Id.

[8] *Jackson v. Virginia*, supra.

[9] *Wright v. State*, 165 Ga. App. 790 (1) (302 SE2d 706) (1983).

gudo's motion for directed verdict and his motion for new trial were proper.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 2, 2001.

*Jody D. Peterman,* for appellant.
*J. David Miller, District Attorney, Robert T. Gilchrist, Assistant District Attorney,* for appellee.