A06A1259. SOUDER v. THE STATE.

(636 SE2d 68)

BERNES, Judge.

A Fulton County jury convicted Sean Souder of aggravated stalking, three counts of aggravated assault, cruelty to children in the first degree, burglary, and threatening a witness. On appeal, Souder contends that the trial court erred in denying his motion for directed verdict of acquittal; that a fatal variance existed between the indictment and the evidence adduced at trial; and that the trial court should have stricken two jurors for cause. Finding no error, we affirm.

Construed in favor of the verdict, the evidence shows that Souder and the victim were involved in a tumultuous, violent relationship

spanning approximately three years, during which time they had a son together. Over the course of their relationship, Souder forced his way into the victim's Fulton County apartment on multiple occasions and attacked her. On one such occasion, Souder kicked in the door to the victim's apartment while the victim and her extended family were present. When the victim asked him to leave, Souder refused and cut the gas line to the hot water heater, cut the cords to electronic equipment and the phone, threw water into the breaker box, and smashed the glass plates and cups stored in the kitchen.

Souder subsequently was arrested and charged with several offenses, including criminal damage to property in the second degree and burglary. Although Souder was released on bond, it was on the condition that, among other things, he not go to the victim's apartment and "not knowingly go within nor knowingly remain within . . . 200 yards of the victim at any time."

The victim thereafter was subpoenaed to testify in the pending criminal case against Souder. However, after the subpoena was served, Souder came by the victim's apartment "like every other day" and repeatedly warned her that "she better not come to court."

On November 4, 2002, "two or three weeks" after the subpoena had been served, Souder and two of his companions busted out a front window of the victim's apartment and climbed through it. As the victim came down the stairs, Souder grabbed her, dragged her into the living room, and began beating her in the face with his fist. When the victim fought back, Souder summoned the aid of his two companions, one of whom hit the victim in the face with a handgun, causing her to lose consciousness. The victim awoke to find Souder holding and shaking their two-year-old son in a rage. When the victim attempted to get her crying child from Souder, another physical fight ensued between her and Souder, who again summoned his companions for assistance. One of Souder's companions punched the victim in the face with metal knuckles while Souder held her by the neck, choking her. One of Souder's companions then struck the victim in the back with a metal pipe. Throughout the entire incident, Souder and his companions repeatedly warned the victim, "Bitch, you better not go to trial."

The victim and her son were later taken by ambulance to Grady Memorial Hospital. The victim had a split lip, bruising and swelling on her face, bleeding in her mouth, and a possible broken jaw. The victim's son, who had the victim's dried blood on his face, was nonresponsive to questions and stared blankly into space.

1. Souder contends that the trial court should have granted his motion for directed verdict of acquittal because the evidence allegedly was insufficient to convict him of three counts of aggravated assault, cruelty to children in the first degree, and burglary arising out of the

November 4 incident.[1] "The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction." (Citation omitted.) *Shelton v. State*, 279 Ga. 161, 162 (3) (611 SE2d 11) (2005). Thus, "the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. [We] determine[ ] only the legal sufficiency of the evidence adduced below and do[ ] not weigh the evidence or assess the credibility of the witnesses." (Footnote omitted.) *Monteagudo v. State*, 247 Ga. App. 801 (545 SE2d 351) (2001). "Our inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation and footnote omitted.) *Linzy v. State*, 277 Ga. App. 673 (627 SE2d 411) (2006). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) *Aggravated Assault.* "A person commits the offense of aggravated assault when he or she assaults . . . with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2) (2002). In separate counts, the indictment averred that Souder committed aggravated assault by striking the victim with (1) "metal knuckles," (2) a firearm, and (3) a "metal pole."

Souder does not dispute that there was sufficient evidence that the victim was assaulted with metal knuckles, a firearm, and a metal pipe during the November 4, 2002 incident. Instead, Souder contends that there was insufficient evidence that he, rather than his two companions, struck the victim with those specific objects, or that he ever directed his companions to strike her with those objects. We disagree.

"Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a) (2002). A person is a party if he "[i]ntentionally aids or abets in the commission of the crime" or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20 (b) (3), (4). "[M]ere presence at the scene of a crime, even coupled with knowledge and approval, is insufficient to convict one of being a party." (Citations and punctuation omitted.) *Stokes v. State*, 232 Ga. App. 232, 233 (1) (501 SE2d 599)

---

[1] Souder enumerates as error the state's alleged failure to introduce sufficient evidence to convict him of *all* the charged offenses for which he was found guilty. But, he provides no legal authority or record citations to support his argument with respect to his convictions for aggravated stalking and threatening a witness. Souder therefore has abandoned any alleged error concerning his convictions on those two counts. See Court of Appeals Rule 25 (c) (2) and (3) (i). Nonetheless, we have reviewed the record and conclude that there was sufficient evidence to convict him of aggravated stalking and threatening a witness.

(1998). "Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary, and may be inferred from the defendant's conduct before, during, and after the crime." (Citations omitted.) *In the Interest of N. L. G.*, 267 Ga. App. 428, 430 (1) (600 SE2d 401) (2004).[2]

While the victim's testimony indicated that it was Souder's two companions who specifically struck her with metal knuckles, a firearm, and a metal pipe, the state presented more than sufficient evidence that Souder was a party to the three charged offenses. At trial, the victim's neighbor testified that after the victim was subpoenaed to testify in Souder's then-pending criminal case, the neighbor observed Souder warn the victim "a few times" that "she better not come to court." In turn, the victim testified that during the November 4 incident, Souder repeatedly warned her that she "better not go to trial" and repeatedly summoned his companions to assist him as he beat the victim with his bare hands. The victim further testified that on at least five prior occasions, Souder had forced his way into her residence and beat her, including one occasion in which she held him off only after pulling out a knife.

Taken together, this testimony authorized the jury to conclude that Souder intentionally procured and encouraged his companions to assist him in beating the victim in order to intimidate her from testifying in the criminal case that was pending against him at that time. See generally OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Tuff v. State*, 278 Ga. 91, 92 (2) (597 SE2d 328) (2004) (evidence of prior difficulties between defendant and victim was "highly relevant" to show "his then-present intention to seriously harm her and his abusive bent of mind toward her"). It follows that the evidence was sufficient to find Souder guilty, beyond a reasonable doubt, as a party to the three counts of aggravated assault charged in the indictment.

(b) *Cruelty to Children in the First Degree.* A "person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b) (2002). The indictment averred that Souder maliciously caused his minor son "excessive physical and mental pain by shaking [him]." Souder contends that his conviction on this count cannot stand because the state allegedly

---

[2] Souder argues that he could not be convicted of aggravated assault as a party to the crime because the indictment did not charge him as such. This argument is without merit. "[T]he state may prove a defendant's culpability for a crime as a party to that crime even though the defendant is not charged with the offense of 'party to a crime.'" (Footnote omitted.) *Monteagudo*, 247 Ga. App. at 803 (2).

produced no evidence of either physical or mental pain that was excessive.[3] Again, we disagree.

> The determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain. . . . There will be a gray area where some would say it is and some would say it is not, and neither is wrong as a matter of law. There will be other areas on each end of the scale. . . . We must determine only whether the circumstances here, taking into account the evidence in favor of the finding and all reasonable inferences from that evidence, would prohibit the finding made by the jury.

(Punctuation and footnotes omitted.) *Sims v. State*, 234 Ga. App. 678, 679-680 (1) (a) (507 SE2d 845) (1998).

The evidence presented at trial reflected that as Souder shook his two-year-old son in a rage, the victim was lying on the ground in front of him unconscious. The victim testified that when she regained consciousness, she saw her son crying as he was being shaken and screamed for Souder to "give me my baby." After the victim's son was placed on the floor, Souder and his companions proceeded to attack the victim in front of her son. The paramedic who later observed the son at the crime scene testified that he had his mother's blood dried on his face. Additionally, the detective who went to the hospital after the incident testified that the son would not leave his mother's presence and "was despondent," "wouldn't play, wouldn't look at you," and "just stared" and "looked into space." This evidence clearly did not prohibit a finding by the jury that Souder's minor son experienced excessive mental pain. See, e.g., *Sims*, 234 Ga. App. at 679-680 (1) (a) (evidence that children witnessed violent physical attack of mother by father was sufficient to authorize finding of excessive mental pain); *Boyce v. State*, 198 Ga. App. 371, 371-372 (1) (401 SE2d 578) (1991), overruled in part on other grounds, *Wilson v. State*, 277 Ga. 195 (586 SE2d 669) (2003) (evidence was sufficient to establish excessive mental pain when child manifested observable signs of

---

[3] Souder also erroneously contends that the indictment as written required the state to prove that his minor son experienced excessive physical *and* mental pain. "Where conjunctive pleadings set forth more than one act by which the accused committed the crime, the evidence is sufficient so long as it shows at least one of the acts alleged." (Footnote omitted.) *Straker v. State*, 259 Ga. App. 904, 905-906 (a) (578 SE2d 568) (2003).

being traumatized). Accordingly, there was sufficient evidence to convict Souder of cruelty to children.

(c) *Burglary.* "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." OCGA § 16-7-1 (a) (2002). The indictment averred that Souder committed burglary by entering the victim's home without authority and with the intent to commit an aggravated assault. Souder argues that there was insufficient evidence to convict him of burglary because the state allegedly failed to present evidence that he had the intent to commit aggravated assault when he entered the victim's apartment. We cannot agree. As shown by the combined testimony discussed in Division 1 (a), there was ample evidence that Souder forcibly entered the victim's apartment so that he and his two companions could beat the victim and thereby intimidate her from testifying in the criminal case that was pending against him. Therefore, the jury was authorized to convict Souder of burglary.

2. Souder contends that a fatal variance exists with respect to the third count of aggravated assault. In that count, Souder was charged with striking the victim "with a metal pole." The victim, however, testified that she was struck with a "pipe." Souder thus contends that there was a fatal variance between the charge in the indictment and the evidence presented at trial. We are unpersuaded.

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

(Citations and punctuation omitted.) *Lowery v. State,* 209 Ga. App. 5, 8-9 (5) (432 SE2d 576) (1993). Both of these requirements were met here. Arguably, "pole" and "pipe" are synonyms for the same object; even if not, they produce a virtually identical injury when used to strike a victim. As such, it cannot reasonably be argued that the indictment failed to inform Souder of the aggravated assault or subjected him to a risk of another prosecution for the same offense. See *Battles v. State,* 262 Ga. 415, 417 (5) (420 SE2d 303) (1992) (no fatal variance when indictment alleged that defendant struck the victim with a wrench and the testimony at trial was that defendant struck the victim with a gun "because a wrench and gun produce similar injuries when used as blunt objects to strike someone on the

head"). See also *Harris v. State*, 233 Ga. App. 696, 698 (2) (505 SE2d 239) (1998); *Mitchell v. State*, 218 Ga. App. 330, 331 (461 SE2d 292) (1995).

3. Souder argues that the trial court erred by failing to strike for cause two potential jurors, Jurors 3 and 23. Souder contends that both were biased against him and should have been stricken because they had prior experiences with domestic violence.[4] "Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." (Citations omitted.) *Nelson v. State*, 269 Ga. App. 103 (1) (603 SE2d 691) (2004). The trial court "is uniquely positioned to observe the juror's demeanor and thereby to evaluate his or her capacity to render an impartial verdict," and so the decision whether to strike a juror for cause is left to that court's sound discretion. (Footnote omitted.) *Brown v. State*, 243 Ga. App. 632, 633 (1) (534 SE2d 98) (2000).

During voir dire, the trial court asked the potential jurors if they or someone close to them had been the victim of domestic violence. Among others, Juror 3 raised her hand. During follow-up questioning, Juror 3 explained that she and her mother had been physically abused by her father, that her father later stalked her and vandalized her car, and that she felt "rage" when thinking about what she had gone through with her father. The juror also noted that she had been married to a husband that abused her daughter but was now divorced. On the other hand, Juror 3 stated that if she were selected as a juror, she believed she could follow the trial court's instruction to base her decision solely on the evidence presented at trial. She later reiterated, "I think I could be fair." Juror 3 also clarified that any rage she felt was a result of thinking about what she had gone through in the past and was in no way directed at Souder, whom the juror believed "look[ed] pitiful."

Juror 23 likewise raised her hand when the trial court asked the potential jurors if they or someone close to them had been the victim of domestic violence. During follow-up questioning, Juror 23 explained that her son was involved in an abusive marriage and had been injured several times by his wife. Based on her son's experience, she felt "very emotional" about being on the jury. However, Juror 23 went on to state that even though it would be hard for her, she would

---

[4] The defense used two of its twelve peremptory strikes to prevent Jurors 3 and 23 from becoming members of the jury. "But a defendant's use of peremptory strikes can play no part in a determination of whether harm was caused by a trial court's failure to strike an unqualified juror." (Citation omitted.) *Park v. State*, 260 Ga. App. 879, 882 (1) (581 SE2d 393) (2003).

"be fair from the heart" in hearing the case. Later, during questioning by defense counsel, the following colloquy ensued:

> DEFENSE COUNSEL: Would it be fair to say, once again, based upon your son's situation and your personal experience that you would lean one way or the other at the beginning of this particular trial not knowing any of the facts?
> JUROR 23: I'm already leaning towards one way.
> DEFENSE COUNSEL: And that would be towards the state?
> JUROR 23: Yes, and that's unfair, but if I were to be chosen, I am not the one to do what's wrong. I would want to do what's right. I wouldn't say, okay — you know, I wouldn't take sides.

In light of this record, we conclude that the trial court did not abuse its discretion in declining to strike Jurors 3 and 23 for cause. "[A] trial court is not required to strike for cause a potential juror who simply questions his or her impartiality or expresses reservations about his or her ability to set aside personal experiences." (Citation and punctuation omitted.) *Anderson v. State*, 276 Ga. 389, 390 (2) (578 SE2d 890) (2003). Indeed, Georgia courts have held that "[a] juror who expresses a willingness to try to be objective and whose bias arises from feelings about the particular crime as opposed to feelings about the accused may be eligible for service." (Punctuation and footnotes omitted.) *Brown*, 243 Ga. App. at 633 (1).

Here, neither Juror 3 nor Juror 23 had a personal connection to anyone involved in the criminal case; instead, their potential biases arose from their personal experiences with crimes similar to those charged in the indictment. And, while both potential jurors expressed reservations about their ability to totally set aside their prior experiences, both expressed a willingness to remain fair and objective and not to prejudge the particular defendant involved in this case. Under these circumstances, the record does not show that Jurors 3 and 23 held such a fixed and definite opinion of Souder's guilt or innocence that they would have been unable to adjudicate the case based on the evidence and the trial court's instructions. See *Holmes v. State*, 269 Ga. 124, 125-126 (2) (498 SE2d 732) (1998); *Johnson v. State*, 262 Ga. 652 (2) (424 SE2d 271) (1993); *Walker v. State*, 277 Ga. App. 485, 486-487 (2) (627 SE2d 54) (2006); *Thomas v. State*, 257 Ga. App. 350, 351 (2) (571 SE2d 178) (2002); *Brown*, 243 Ga. App. at 633 (1). "Thus, striking [the potential jurors] for cause was not demanded." *Anderson*, 276 Ga. at 390 (2).

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED AUGUST 29, 2006 — 

*Sexton, Key & Hendrix, Joseph S. Key*, for appellant.
*Paul L. Howard, Jr., District Attorney, Kenneth L. Hutcherson, Stephany J. Lewis, Assistant District Attorneys*, for appellee.