A07A0782. CUYUCH v. THE STATE.
(649 SE2d 856)

BLACKBURN, Presiding Judge.

Following a jury trial involving the testimony of law enforcement officers about what the alleged victim and another individual told them, Leonardo Argueta Cuyuch was convicted of aggravated battery. Cuyuch contends that the trial court erred (1) in admitting the alleged double hearsay of a translator, who was translating a witness's statements, in violation of his Sixth Amendment rights and (2) in failing to grant a directed verdict of acquittal at the close of the

State's case because the evidence was insufficient to submit the case to the jury, given the State's reliance on allegedly inadmissible hearsay testimony. Because there was evidence identifying Cuyuch as the perpetrator of the crime, and the trial court did not abuse its discretion in admitting such evidence, we must affirm.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. Thus, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. We determine only the legal sufficiency of the evidence adduced below and do not weigh the evidence or assess the credibility of the witnesses. Our inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations omitted.) *Souder v. State*.[1]

So viewed, the evidence shows that at approximately 1:30 a.m., a 16-year-old male who was crying and bleeding heavily from a cut on his left arm approached a City of Canton police officer in a restaurant parking lot. The victim told the officer that his roommate had cut him, and he pointed at the road across the street. A police sergeant who had arrived to back up the first officer left the scene to find the roommate at the address given by the victim. The sergeant drove down the road indicated by the victim and was flagged down by a man on the side of the road, later identified as Francisco Lorenzo, who was yelling that his friend needed help. Because there was a "minor language barrier" between the sergeant and the Spanish-speaking Francisco, the sergeant put him in his patrol car and "had him physically show me where he wanted to go to help his friend." Francisco directed the sergeant to the victim's address. When they got inside the house, the sergeant found two people watching television. The officer asked if the person sitting on the couch needed assistance, and Francisco responded, "No. My friend needs help."

The sergeant called what he described as a "language line" to enlist the help of an interpreter who could translate Spanish to English. The sergeant asked Francisco who needed help, and Francisco explained through the interpreter that his friend, the victim, had been badly cut and needed help, and that the person sitting on the couch, Cuyuch, was the person who had cut his friend. After the translator told the sergeant that the weapon had been thrown, the

---

[1] *Souder v. State*, 281 Ga. App. 339, 341 (1) (636 SE2d 68) (2006).

sergeant asked Francisco to show him in which direction the weapon had been thrown, and the sergeant retrieved the weapon from the yard. The sergeant described the weapon as a carpenter knife.

After confirming with the medic that it was safe to do so, the officer, who had remained with the victim, told the victim that he was going to take him back to his home to identify the suspect. As the officer was transporting the victim back to his home, the victim began saying, "him" repeatedly, but the officer did not know what he meant. The officer parked the vehicle and the victim got out, and the officer asked, "Is that him?" The victim pointed at Cuyuch and said, "Yes. He's the one who cut me." On the way to the police station, Cuyuch told the sergeant he "knew what had happened" and threatened that he would "remember" him when he got out of jail.

Cuyuch subsequently was indicted for aggravated battery. The indictment averred that Cuyuch committed the charged offense by cutting the victim, seriously disfiguring his arm. See OCGA § 16-5-24 (a). At trial, the State established that the victim had suffered a serious, disfiguring injury through the testimony of the officers who observed the victim. But, the State never called the victim or Francisco to testify about the alleged cutting incident. Rather, the State relied entirely on the testimony of law enforcement officers about what Francisco and the victim had told them. Additionally, while the State also presented similar transaction evidence through the testimony of two police officers that Cuyuch had previously stabbed one of his roommates in the arm, no witnesses to the similar transaction testified.

From the outset, it is important to understand what Cuyuch has enumerated as error. He enumerates first that the trial court erred in allowing the double hearsay of the translator (who was translating Francisco's statements) in violation of Cuyuch's Sixth Amendment rights. Second, he argues that the trial court erred in denying his motion for a directed verdict, as there was insufficient admissible evidence to submit the case to the jury. Thus, if the translator's translation to police of Francisco's statements was properly admitted as res gestae (as was expressly determined by the trial court), then Francisco's identification of Cuyuch as the person who had cut the victim and his showing the officer where the knife used by Cuyuch was thrown into the yard would alone suffice to defeat the motion for directed verdict. Accordingly, we would not need to address whether the victim's statements to police (also identifying Cuyuch as the attacker) were also admissible as res gestae, since Francisco's statements alone would have sufficed to justify the denial of the motion for directed verdict.

1. *The trial court correctly ruled that Francisco's statements through the translator were admissible.* Cuyuch's first enumeration

of error argues that the translator's rendering of Francisco's statements to police was double hearsay, and that the trial court erred in overruling his objection to the police testimony about those statements. He attacks this evidence on two fronts: (i) he claims that the statements came from a translator, who was translating the statements from Francisco, and that this was double hearsay; and (ii) he then claims that even if the translator's translation was a proper conduit of Francisco's statements, those statements to police were themselves hearsay and did not fit the criteria for the res gestae exception.

(a) *The translator did not create another level of hearsay.*

[A]bsent a motive to mislead, distort or some other indication of inaccuracy, when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay.

(Punctuation omitted.) *Lopez v. State.*[2] Cuyuch has not demonstrated that the translator had any motive to mislead the officer or that the translation was inaccurate in any way. Thus, this argument is without merit.

(b) *Evidence supported the trial court's ruling that Francisco's statements met the res gestae exception.* We now consider whether the trial court erred in finding that the statements met the res gestae exception. OCGA § 24-3-3 provides that "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." In *Andrews v. State*,[3] our Supreme Court held that "a trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous." See *Mize v. State*.[4] In addition, this Court has held that

[w]hat the law altogether distrusts is not after-speech but after thought. In cases when a statement is narrative rather than exclamatory, the circumstances must be closely scrutinized, because narrative is generally the result of afterthought. If the declarations appear to spring out of the

[2] *Lopez v. State*, 281 Ga. App. 623, 625 (1) (636 SE2d 770) (2006).

[3] *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982).

[4] *Mize v. State*, 262 Ga. App. 486, 488 (1) (585 SE2d 913) (2003).

transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous. However, no precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed. The admissibility of such declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the requirements of being free from all suspicion of device or afterthought. It is also a well established rule of law that if the admissibility of evidence is doubtful, the rules of evidence require that the evidence be admitted and its weight and effect left to the jury.

(Punctuation omitted.) *Park v. State.*[5] In addition, "[e]vidence showing the statements were made while the parties were still laboring under the excitement and strain of the circumstances and in such proximity in time as to preclude the idea of deliberation or fabrication will support a judicial finding that the statements were sufficiently informative and reliable." (Punctuation omitted.) Id. at 280 (5).

Here, shortly after the violent encounter, Francisco flagged down a police officer a short distance from Cuyuch's house and, through a translator, made statements identifying Cuyuch as the person who cut the victim. In addition, Francisco informed the officer that Cuyuch had thrown the knife used in the attack into the yard outside of his home, and based on this information, the officer was able to recover the weapon. Given these circumstances, the trial court's finding that Francisco's statements were not premeditated but made while still laboring under the excitement and strain of the recent violent attack against his friend was neither clearly erroneous nor an abuse of discretion. See *Mize*, supra, 262 Ga. App. at 488 (1); *Park*, supra, 230 Ga. App. at 280 (5); *Morris v. State.*[6]

Furthermore, contrary to the conclusion in the dissent's opinion, evidence inferentially showed that Francisco's detailed statements were based on personal knowledge. His frantic flagging down of police shortly after the attack, his immediate taking of police to the scene of the crime, his immediate and definitive identification of Cuyuch as

---

[5] *Park v. State*, 230 Ga. App. 274, 279 (5) (495 SE2d 886) (1998).
[6] *Morris v. State*, 228 Ga. App. 90, 93 (2) (491 SE2d 190) (1997).

the man who cut his friend, and his accurate description of the place where Cuyuch had disposed of the knife, all show detailed and accurate knowledge shortly after the attack. Such thorough and detailed knowledge within a short time of the attack support the inference that Francisco's statements came from his personal observations of the attack, rather than from the distressed and bleeding victim who was trying to escape and find help. See *Freeman v. Lambert*[7] ("circumstances [may show] at least inferentially that the . . . declarant was present and that his declaration arose from personal observation"). See also *Bush v. Wyche.*[8] Thus, at least some evidence supported the trial court's determination that these statements met the criteria for the res gestae exception, including the criterion that such came from personal observation.

For these reasons, we hold that some evidence supported the trial court's ruling admitting Francisco's statements to police (through the translator).

2. *Francisco's statements supported a conviction.* Based on Francisco's statements, as well as the officers' observations and testimony specifically regarding the victim's injury, there was sufficient evidence for a rational trier of fact to find Cuyuch guilty of aggravated battery beyond a reasonable doubt. *Jackson v. Virginia.*[9] See *Souder*, supra, 281 Ga. App. at 341 (1); *Mize*, supra, 262 Ga. App. at 488 (2). Thus, we need not address whether the identifying statements made to police officers by the victim were also admissible. Accordingly, we affirm the trial court's overruling of Cuyuch's objection to the admission of Francisco's statements and also affirm the trial court's denial of Cuyuch's motion for directed verdict of acquittal.

*Judgment affirmed. Andrews, P. J., Smith, P. J., Ruffin and Miller, JJ., concur. Barnes, C. J., and Bernes, J., dissent.*

BERNES, Judge, dissenting.

I respectfully dissent. "The right to confront one's accusers is a concept that dates back to Roman times." *Crawford v. Washington*, 541 U. S. 36, 43 (II) (A) (124 SC 1354, 158 LE2d 177) (2004). And, "[t]he primary flaw of hearsay testimony is the lack of opportunity for the declarant to be cross-examined as to honesty, truthfulness, perception, and memory." (Punctuation and footnote omitted.) *Conley v. State*, 257 Ga. App. 563, 564 (1) (571 SE2d 554) (2002). This case — involving a conviction predicated solely on the testimony of law enforcement with no ability by the accused to cross-examine any of

[7] *Freeman v. Lambert*, 168 Ga. App. 751, 752 (1) (309 SE2d 873) (1983).

[8] *Bush v. Wyche*, 147 Ga. App. 807 (1) (250 SE2d 553) (1978).

[9] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

his accusers — is a classic example of what the hearsay rules were developed to prevent. Cuyuch's conviction, based on hearsay statements admitted through law enforcement officers, thus should be reversed.

The only evidence identifying Cuyuch as the person who cut the victim's arm was through Francisco's statements to the sergeant through a translator, and the victim's out-of-court identification of Cuyuch to the officer at the victim's house.[10] Absent a hearsay exception such as res gestae, a law enforcement officer may not testify to a pre-trial identification of the accused unless the person who made the accusation also testifies. *White v. State*, 273 Ga. 787, 788 (546 SE2d 514) (2001).

1. *Francisco's Out-of-Court Identification.* Contrary to the majority's conclusion, Francisco's identification of Cuyuch — admitted through the sergeant's testimony about what the translator told the sergeant about what Francisco had told the translator — constituted impermissible hearsay. Pretermitting whether Francisco's statement identifying Cuyuch as the victim's attacker was otherwise part of the res gestae, Francisco did not tell how he came to the conclusion that Cuyuch cut the victim. Nor was Francisco encountered by the sergeant at the scene of the alleged attack. Thus, "there was no evidence to show that [Francisco] spoke from personal knowledge, or whether he was merely relaying information he had obtained from another person." *Orr v. State*, 281 Ga. 112, 113 (2) (636 SE2d 505) (2006). See also *Freeman v. Lambert*, 168 Ga. App. 751, 752 (1) (309 SE2d 873) (1983) (res gestae exception does not dispense with requirement that declarant was witness to thing he declared). Indeed, the State itself virtually conceded in closing argument to the jury that there was no way of knowing whether Francisco had personal knowledge:

> You heard that Francisco said that this is the man who did it. Now, how did Francisco know any of this? Well, we don't know. There wasn't any testimony of that. . . . Did Francisco see it? We don't know. Did [Cuyuch] tell Francisco? We don't know. . . .

Without evidence showing that Francisco spoke from personal knowledge, his statement is reduced to an inadmissible expression of opinion or conclusion. See *Dolensek v. State*, 274 Ga. 678, 679 (2) (558

---

[10] Although the victim identified his "roommate" as the person who cut him in his initial encounter with police, it was never established that Cuyuch was the victim's only roommate. Furthermore, Cuyuch's spontaneous, angry statements to the officer after his arrest were consistent with his guilt *or* innocence.

SE2d 713) (2002). It follows that Francisco's out-of-court statements were impermissible hearsay that could not be admitted to show that Cuyuch cut the victim. Id.

It is true, as the majority notes, that the trial court determined that Francisco's statements fell within the res gestae and that a clearly erroneous standard of review applies in this context. See *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982). Nevertheless, a trial court's determination that a declarant had personal knowledge of which he spoke cannot be predicated on mere guesswork or speculation. Rather, "*with some degree of persuasive force*, it must appear that [the declarant] was in reality a witness to the thing which he declared." (Citation and punctuation omitted; emphasis supplied.) *Freeman*, 168 Ga. App. at 752 (1). Here, it was equally plausible that the victim or one of his other roommates told Francisco what had happened immediately after it occurred, and that Francisco then relayed this information to law enforcement. Given the skeletal record on this issue, as acknowledged by the State in closing argument — which included no information about Francisco's relationship to the victim or Cuyuch, where he lived, what he was doing at the alleged crime scene, or who the other person was sitting on the couch besides Cuyuch, among other missing facts — neither this Court nor the trial court could determine whether Francisco had personal knowledge without resorting to speculation.[11] See id.

2. *The Victim's Out-of-Court Identification.* The officer's testimony concerning the victim's pre-trial identification of Cuyuch at his home likewise constituted inadmissible hearsay that did not fall within the res gestae. If the statements are made deliberately and after the declarant has had the time to reflect on the occurrence, the res gestae exception does not apply. See *Peebles v. State*, 236 Ga. 93, 95 (2) (222 SE2d 376) (1976). In the present case, the pre-trial identification made by the victim occurred after the victim received medical treatment, after the police officer told the victim that he was taking him to the alleged crime scene to identify the perpetrator, after the victim was then taken back to the alleged crime scene by the officer, and in response to a question by the officer. Specifically, the officer testified, "Right after the med unit arrived, I asked [the victim] if [it] was okay for me to go take him to his house to identify the

---

[11] Francisco's statement did not fall within any other exception to the hearsay rule, such as the necessity exception. That exception requires, among other things, that the declarant be unavailable and that reasonable efforts have been made to secure his or her presence at trial. See *Grimes v. State*, 280 Ga. 363, 366 (5) (628 SE2d 580) (2006); *White*, 273 Ga. at 791 (3). The State never demonstrated that it made reasonable efforts to secure Francisco's presence at trial, and so the State failed to show that the necessity exception applied. See *White*, 273 Ga. at 791 (3).

person" who had hurt him. The officer then drove the victim to his house and, referring to Cuyuch who had been arrested and was sitting in a police car, asked the victim, "Is that him?" The victim responded to the officer's question in the affirmative. Under these circumstances, particularly where the officer told the victim that he was being taken to the crime scene for the express purpose of identifying the perpetrator, the victim's statement identifying Cuyuch was not "free from all suspicion of device or afterthought." OCGA § 24-3-3. See, e.g., *Wilbourne v. State*, 214 Ga. App. 371, 372 (1) (448 SE2d 37) (1994) (although victim was upset and had been drinking, her statements to officer three-and-a-half hours after the assault were not undeniably free from suspicion or afterthought and were not part of the res gestae).[12]

"[E]rroneously-admitted hearsay may not be considered in reviewing the sufficiency of the evidence." (Citations omitted.) *Livingston v. State*, 268 Ga. 205, 209 (1) (486 SE2d 845) (1997). This means that even where there was no objection to the hearsay testimony at trial, the "hearsay is without probative value to establish any fact." (Citations omitted.) *Collins v. State*, 146 Ga. App. 857, 860 (1) (b) (247 SE2d 602) (1978). See also *Green v. State*, 277 Ga. App. 867 (627 SE2d 914) (2006). Excluding Francisco's and the victim's statements identifying Cuyuch, I believe that there was insufficient evidence for a rational trier of fact to find Cuyuch guilty of aggravated battery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). I therefore dissent from the majority opinion in this case. I am authorized to state that Chief Judge Barnes joins in this dissent.

DECIDED JULY 16, 2007 — ■

*Carlton C. Carter*, for appellant.
*Garry T. Moss, District Attorney, Samuel K. Barger, Assistant District Attorney*, for appellee.

---

[12] As was true with Francisco, the State failed to show that it had made reasonable efforts to secure the victim's presence at trial, and so the necessity exception did not apply.